**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**$39,000 IN CANADIAN
CURRENCY, Defendant,**

**Charles Duguet, Claimant-Appellee.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**ONE 1983 VOLVO GL TURBO VIN
# YV1AX4741D1918785, Defendant,**

**Albert B. Stork, Claimant-Appellee.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**ONE 1982 SAAB 900 TURBO, ID
# YS3AT34S2C10264423, Defendant,**

**David William Foster,
Claimant-Appellee.**

**Nos. 84–1757, 84–2081 and 84–2601.**

United States Court of Appeals,
Tenth Circuit.

Sept. 17, 1986.

**1212**

Robert N. Miller, U.S. Atty., and F. Joseph Mackey III, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellant.

Michael L. Bender and Laurie L. Martin of Bender & Treece, P.C., Denver, Colo., for claimant-appellee Duguet.

Lee D. Foreman and Jay P.K. Kenney of Haddon, Morgan & Foreman, P.C., Denver, Colo., for claimant-appellee Stork.

Charles Szekely, Asst. Federal Public Defender (Michael F. DiManna of DiManna & Jackson, on brief), Denver, Colo., for claimant-appellee Foster.

Before SEYMOUR, and SETH, Circuit Judges, and SEAY,* District Judge.

SEYMOUR, Circuit Judge.

The United States appeals from three district court orders dismissing without prejudice civil forfeiture complaints brought under 21 U.S.C. § 881 (1982). Complaints under this section must comply

---

* The Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

with the procedural requirements of the Supplemental Rules for Certain Admiralty and Maritime Claims (the Supplemental Rules). *Id.,* § 881(b). The district courts ruled that the Government's complaints failed to allege with sufficient particularity the facts and circumstances underlying the claims for forfeiture and therefore did not comply with the applicable pleading rules. We consolidated the appeals, and we affirm.

## I.

## BACKGROUND

The issues raised by *United States v. $39,000 in Canadian Currency,* No. 84-1757, and *United States v. One 1983 Volvo GL Turbo,* No. 84-2081, are identical to those raised by *United States v. One 1982 Saab 900 Turbo,* No. 84-2601. Although we discuss in detail only the first two actions, our reasoning and conclusions apply to all three.

### A. The Canadian Currency

On March 14, 1983, the Government filed a civil forfeiture action against Canadian currency in an unknown amount under 31 U.S.C. § 5317 (1982), which permits the forfeiture of monetary instruments over $5,000 imported without a report to the Secretary of the Treasury. The complaint stated:

"1. The Court has jurisdiction under 28 U.S.C. §§ 1345, 1355 and 31 U.S.C. § 5317.

"2. On January 27, 1983, January 28, 1983, and March 14, 1983, certain Canadian currency in the total approximate amount of $90,000 was converted to U.S. currency at Denver banks by individuals whose exact identity at this time is unknown.

"3. On March 14, 1983, one of the aforesaid individuals, believed to be Charles Duguet, appeared at Intrawest Bank and Colorado National Bank and converted or attempted to convert approximately $39,000 in Canadian currency to U.S. currency. Said individual was unable to produce a Customs Form 4790, a report of International Transportation of Currency or Monetary Instruments.

"4. Pursuant to 31 U.S.C. § 5316, the importation of monetary instruments in excess of $5,000 must be reported to the Secretary of the Treasury on Form 4790. On information and belief, there is in the custody of the aforesaid Charles Duguet Canadian currency which has been introduced into the United States of America in violation of 31 U.S.C. § 5316. Said currency is in the District of Colorado.

"5. Title 31, § 5317, provides for seizure and forfeiture of monetary instruments such as defendant when a report under § 5316 has not been filed.

"WHEREFORE, the United States of America prays that due process issue to enforce the forfeiture of defendant and that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed."

Rec., vol. I, at 1–2. The next day the district judge issued an order for warrant of arrest *in rem.* Agents of the United States Customs Service then seized the currency from Charles Duguet, who subsequently filed a claim for its return.

On November 1, 1983, over seven months later, the Government amended the complaint by adding a second claim for forfeiture under section 881, which permits forfeiture of property furnished for or traceable to an exchange for a controlled substance. *See* 21 U.S.C. § 881(a)(6) (1982).[1] The second claim stated:

---

**1.** 21 U.S.C. § 881(a) provides, in pertinent part:
"The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 ....
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter...."
After the dismissals in this case, § 881 was amended by Title II of the Comprehensive

"6. Plaintiff repeats paragraphs 1 through 5.

"7. On March 14, 1983, pursuant to a warrant issued by the United States District Court for the District of Colorado, agents of the United States Customs Service seized the defendants from Charles Duguet. The defendants are $39,000 of Canadian currency.

"8. The defendants are things of value furnished or intended to be furnished by a person in exchange for a controlled substance, or are proceeds traceable to such an exchange in violation of Title 21 U.S.C., in that Charles Duguet or confederates of Charles Duguet intended to convert the Canadian currency into U.S. dollars for the acquisition of controlled substances.

"9. Under the provisions of 21 U.S.C. § 881(a), no property right exists in the defendants, and they have become and are forfeited to the United States of America.

"WHEREFORE, the United States of America prays that due process issue to enforce the forfeiture of defendant and that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed."

Rec., vol. I, at 12.

Duguet filed a motion to dismiss the second claim on the ground that it failed to state the underlying circumstances with particularity, which he alleged was required by the Supplemental Rules. The district court granted the motion and dismissed the claim, without prejudice, on the ground that the complaint was "insufficient in its factual allegations to be in compliance with Rule E(2) of the Supplemental Rules which govern this action ...." Rec., vol. I, at 31. In order to appeal this dismissal, the Government moved to dismiss the first claim, based on 31 U.S.C. § 5317. The district court granted the motion and dismissed that claim with prejudice.

Crime Control Act of 1984, Pub.L. No. 98–473, §§ 306, 518, 98 Stat. 1976, 2050–51, 2075 (1984). *See* 21 U.S.C.A. § 881 (West Supp. 1985). The

## B. The Volvo

On or about February 8, 1984, agents of the Drug Enforcement Administration seized without warrant a 1983 Volvo GL Turbo automobile. On March 6, the Government filed a civil forfeiture action against the Volvo under sections 881(a)(4) and (a)(6), alleging:

### "FIRST CLAIM FOR RELIEF

"1. That the court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

"2. That the defendant vehicle is valued at more than ten thousand dollars and is described as follows:

One 1983 Volvo, GL Turbo, VIN # YV1AX4741D1918785, blue, 4 door, 130 cu. engine, with Colorado license plate VAK–996.

"3. That defendant property has as its registered owner Carol Jean Nanninga, P.O. Box 44, Bailey, Colorado 80421.

"4. That the defendant vehicle was seized by the United States Government by duly authorized agents of the United States Drug Enforcement Administration on or about February 8, 1984, on land within the District of Colorado.

"5. That notice of seizure will be sent by certified mail to Carol Jean Nanninga and Albert Stork, also known as Alberto Miguel Marchetti, 11874 Cochise Circle, Conifer, Colorado, last known address, on or about the week of March 5, 1984.

"6. That on or before February 8, 1984, Albert Stork was engaged in the sale, distribution, and dispensing of a controlled substance to wit: cocaine and marihuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

"7. That on and before February 8, 1984, proceeds received in exchange for a controlled substance in violation of law outlined above constituted the majority of the income of Carol Jean Nanninga and Albert Stork.

amendments to subsection (a) expanded the types of property subject to forfeiture under § 881, but left § 881(a)(6) unchanged.

"8. That defendant property was purchased using proceeds traceable to exchanges for a controlled substance, on and before July 18, 1983, in violation of 21 U.S.C. § 881(a)(6). Therefore, defendant property is subject to forfeiture to the United States of America and no other property right shall exist in it.

"SECOND CLAIM FOR RELIEF

"The plaintiff repeats paragraphs one through eight.

"9. That defendant 1983 Volvo was used, and intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance, to wit: cocaine, on or before October 14, 1983, in violation of 21 U.S.C. § 881(a)(4).

"WHEREFORE, plaintiff, United States of America, prays this Honorable Court to adjudge and decree as follows:

"1. That defendant property be proceeded against for forfeiture in accordance with the law and regulations and rules of the Court and that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed.

"2. That the Court for the reasons set forth hereinabove, order, adjudge, and decree that said property be forfeited to the United States of America and disposed of according to law and regulations and that the Court provide such other relief as is just and appropriate.

"3. That costs of said action be assessed against the defendant."

Rec., vol. I, at 1–2.

Albert Stork filed a claim to the Volvo and moved to dismiss the complaint on the ground that it failed to allege underlying facts with sufficient particularity. After permitting the Government several amend-

ments,[2] the district court dismissed the claim for failure to comply with the requirements of the Supplemental Rules. The court found:

"That the complaint filed in the above-referenced matter does not comport with the requirements of Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims, even as amended on June 21, 1984, in that it does not state with sufficient particularity as is required under Rule E(2)(a), the circumstances upon which it is based. *See, e.g.,* Wright & Miller, Federal Practice and Procedure: Civil § 3242."

Rec., vol. I, at 17.

### C. The Government's Position

On appeal, the Government argues that the district courts erred in requiring more particular pleadings. It contends that a civil forfeiture complaint under section 881 must satisfy only the requirements of notice pleading, and need not delineate in detail the factual basis on which the civil forfeiture is based.

## II.

### REQUIREMENTS OF THE SUPPLEMENTAL RULES

Section 881(b) provides that "[a]ny property subject to civil or criminal forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims." 21 U.S.C.A. § 881(b) (West Supp. 1985). The Supplemental Rules are part of the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. A–F, and apply to actions *in rem, see* Fed.R.Civ.P. A(2), such as civil forfeitures. According to the

---

2. The amendments provided:

"6. That on or about February 8, 1984, and before, for the previous five years, Albert Stork was engaged in the sale, distribution, and dispensing of a controlled substance to wit: cocaine and marihuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

"9. That defendant 1983 Volvo was used, and intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance, to wit: cocaine, on or about, October 14, 1983, in violation of 21 U.S.C. § 881(a)(4)."

Rec., vol. I, at 14.

Supplemental Rules, a complaint in an *in rem* action

> "shall state the circumstances from which the claim arises *with such particularity* that the defendant or *claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.*"

Fed.R.Civ.P. E(2)(a) (emphasis added).

Undeterred by this plain directive, the Government argues that civil forfeiture complaints should be governed by the standard of notice pleading generally utilized in the Federal Rules of Civil Procedure. Citing no authority for the proposition that Rule E(2)(a) has been supplanted with the more liberal provisions of notice pleading, the Government would have us hold that a short and plain statement of the claim, *see* Fed.R.Civ.P. 8(a), gives a civil forfeiture claimant adequate means to plead responsively and to begin investigating.

 We find this argument without support in law or reason. The imprecision of notice pleading is ameliorated by the availability of the motion for a more definite statement under Fed.R.Civ.P. 12(e), but Rule E(2)(a) mandates that a defendant or claimant be able to respond without such a motion. The Government maintains that a claimant can respond to allegations in a civil forfeiture complaint by simply filing a general denial, *see* Fed.R.Civ.P. 8(b), and then initiating discovery. We do not view a general denial as a responsive pleading within the meaning of Rule E(2)(a), because it neither answers particular allegations nor frames the issues for a court deciding a

forfeiture claim. Rule E(2)(a) requires on its face that the complaint be specific enough to enable a claimant to respond with some degree of particularity and to commence an investigation of the facts initially alleged. Notwithstanding the availability of discovery and the motion for a more definite statement, Rule E(2)(a) contemplates that a claimant be able to respond without further procedural maneuvering. The general Federal Rules of Civil Procedure do apply to civil forfeiture actions, but the Supplemental Rules take precedence when the two are inconsistent. *See* Fed.R.Civ.P. A; 7A J. Moore & A. Pelaez, *Moore's Federal Practice* ¶ E.02 (2d ed. 1983). Rule E(2)(a) requires a more particularized complaint than is necessary in civil actions generally or in those admiralty proceedings where drastic remedies, such as *in rem* forfeitures, are not sought. *See* 12 C. Wright & A. Miller, *Federal Practice & Procedure* § 3242 (1973); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1227 (1969).[3]

 The Government assures us that the claimant is often in a better position than the Government to know the facts underlying a particular forfeiture claim. This argument grossly misconceives the strictures of the burden of proof. In an actual forfeiture proceeding, the Government bears the burden of going forward, and must show probable cause that the property subject to forfeiture is involved in criminal activity. Once this is established, the burden shifts to the claimant to prove by a preponderance of the evidence that

---

**3.** The legislative history of the civil and criminal forfeiture statutes allowing forfeiture for violations of the drug laws does not support the Government's contention that the Supplemental Rules require no more specificity than notice pleading. Congress enacted section 881 as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 511, 84 Stat. 1236, 1276–78 (1970), to "strengthen existing law enforcement authority in the field of drug abuse, ... through providing more effective means for law enforcement aspects of drug abuse prevention and control." H.R.Rep. No. 1444, 91st Cong., 2d Sess. 1, *reprinted in* 1970 U.S. Code Cong. & Ad. News

4566, 4566–67. Likewise, when it amended section 881 and enacted new criminal forfeiture provisions, *see* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, §§ 302–323, 98 Stat. 1976, 2040–57 (1984), Congress intended, in part, to "enhance the use of forfeiture." S.Rep. No. 225, 98th Cong., 2d Sess. 191, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3182, 3374. Despite this obvious Congressional intent to strengthen law enforcement weaponry against the illegal drug trade, nothing in the exhaustive legislative history of either Act suggests relaxation of the Supplemental Rules requirements so as to permit mere notice pleading.

the property is not subject to forfeiture. *See, e.g., United States v. One 1974 Porsche 911–S,* 682 F.2d 283, 285 (1st Cir. 1982) (citing additional cases). These principles illuminate the burdens at the pleading stage. It is the Government that is attempting to deprive a person of property. It is therefore the Government's burden to satisfy the initial pleading requirements by specifically alleging the circumstances underlying the claim. *Cf. United States v. Banco Cafetero International,* 608 F.Supp. 1394, 1401 (S.D.N.Y.1985).

The Government propounds a second set of arguments based on admiralty practice. Because actions *in rem* were long the daily fare of admiralty courts, the admiralty procedures have been borrowed by other areas of law for forfeiture actions. *See* 21 U.S.C.A. § 881(b); 21 U.S.C. § 334(b) (1982) (adulterated or misbranded food, drugs, and cosmetics forfeitable under admiralty procedures); G. Gilmore & C. Black, *The Law of Admiralty* § 1–12, at 31 & n. 106 (1957).

Admiralty law, the Government asserts, has traditionally construed pleadings liberally. Reviewing the few cases the Government cites that apply the liberality requirement, we observe that they do not concern Rule E(2)(a)'s mandate of factual particularity. *See Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 808 (2d Cir.1971) (allowing negligence claim to include claim for tortious conduct); *McConville v. Florida Towing Corp.,* 321 F.2d 162, 166–67 (5th Cir.1963) (enabling party to avoid laches); *D'Agosta v. Royal Netherlands Steamship Co.,* 301 F.2d 105, 107 (2d Cir.1962) (allowing third-party plaintiff recovery under unpleaded indemnity theory where third-party defendant had itself introduced evidence of agreement); *Richfield Oil Corp. v. United States,* 248 F.2d 217, 224–25 (9th Cir.1957) (allowing allegations in answer to exceptions and exceptive allegations to supply defects in complaint). ■ We find equally unpersuasive the cases the Government cites for the proposition that an admiralty complaint is sufficient if it states a claim upon which relief can be granted, however inartistically drawn. One of the cases, *DiMeglio v. The Black Condor,* 120 F.Supp. 865, 866 (S.D.N.Y.1954), relies solely on a case decided under the general Federal Rules of Civil Procedure rather than the Supplemental Rules. Another case, *Oliver J. Olson & Co. v. Marine Terminals Corp.,* 215 F.Supp. 490, 492 (N.D.Cal.1962), holds only that a complaint against several defendants who transported plaintiff's goods need not specify which defendant damaged those goods. Thus, the liberal construction to be accorded admiralty pleadings does not undermine the general requirement that an admiralty complaint "state the various allegations of fact upon which the libelant relies in support of his suit." *The Blairmore I,* 10 F.2d 35, 36 (2d Cir.1925); *cf. Banco Cafetero International,* 608 F.Supp. at 1401.

■ The Government further relies on old Supreme Court decisions, most notably *The Confiscation Cases,* 87 U.S. (20 Wall.) 92, 104–07, 22 L.Ed. 320 (1874), for the proposition that a forfeiture complaint is sufficient if it simply mimics the pertinent forfeiture statute. We do not believe these cases are controlling. They predate the promulgation both of the Supplemental Rules in 1966, *see* Order of February 28, 1966, 86 S.Ct. *173, 200–11* (1966), and the predecessor Rules of Practice in Admiralty and Maritime Cases in 1920. They were part of an era in which admiralty law took pride in its nonconformity to the "technical niceties" of common law pleading. *See The Merino,* 22 U.S. 391, 401, 9 Wheat. 172, 177, 6 L.Ed. 118 (1824); *The Samuel,* 14 U.S. 9, 15, 1 Wheat. 5, 7, 4 L.Ed. 23, (1816). Developments in constitutional law undermine the Government's reliance on these early cases. The particularity requirement of Rule E(2)(a) has been cited as a safeguard in cases upholding the special maritime remedies against due process attack. *See Polar* against due process attack. *See Polar Shipping Ltd. v. Oriental Shipping Corp.,* 680 F.2d 627, 639 (9th Cir.1982); *Riverway Co. v. Spivey Marine & Harbor Service Co.,* 598 F.Supp. 909, 913 (S.D.Ill.1984);

*Amstar Corp. v. M/V Alexandros T.,* 431 F.Supp. 328, 334–35 (D.Md.1977), *aff'd,* 664 F.2d 904 (4th Cir.1981); *cf. Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion,* 773 F.2d 1528, 1537 (11th Cir.1985) (en banc). The drastic nature of admiralty and forfeiture remedies requires heightened protections not present in general civil practice. *See Riverway,* 598 F.Supp at 913. One of these safeguards is Rule E(2)(a)'s requirement that a complaint state the circumstances on which the claim is based with more particularity than is generally necessary.

The Government finally argues that requiring more than notice pleading in civil forfeiture cases would impede its ability to conduct criminal investigations and prosecutions. The actions against the Canadian currency and the Volvo, the Government informs us, parallel comprehensive federal grand jury investigations in Colorado. The complaint against the Saab preceded by less than nine months the indictment of claimant Foster in a parallel criminal investigation. Requiring more than notice pleading, the Government maintains, could reveal sensitive information and jeopardize investigations.

■ The Government's concern with jeopardizing criminal investigations discloses a fundamental misconception about the difference between civil and criminal forfeiture. The legal fiction underlying civil forfeitures characterizes them as proceedings *in rem* against "offending inanimate objects" as defendants. *Bramble v.*

*Richardson,* 498 F.2d 968, 971 (10th Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). The automobile, currency, or other object "is treated as being itself guilty of wrongdoing."[4] *United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453, 454 (7th Cir.1980); *see also Calero-Toledo v. Pearson Yacht,* 416 U.S. 663, 683–86, 94 S.Ct. 2080, 2091–93, 40 L.Ed.2d 452 (1974). For this reason, "the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense."[5] *Pearson Yacht,* 416 U.S. at 683, 94 S.Ct. at 2092.

■ Criminal forfeiture is distinct from civil forfeiture because it is a proceeding brought against a person rather than a thing. *Compare* 21 U.S.C.A. § 881(a) (West Supp. 1985) (property subject to civil forfeiture) *with id.* § 853(a) (property subject to criminal forfeiture). As Congress recognized when it enacted Title II of the Comprehensive Crime Control Act of 1984, criminal forfeiture "is an *in personam* proceeding against a defendant in a criminal case and is imposed as a sanction against the defendant upon his conviction." S.Rep. No. 225, 98th Cong., 2d Sess. 191, 193, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3182, 3374, 3376. A criminal forfeiture may be ordered only if a defendant is convicted. 21 U.S.C.A. § 853(a). To prevent the transfer of assets before a conviction is obtained, the new criminal forfeiture provisions of title 21 provide substantial means to freeze an individual's property upon or before the filing of an indictment.[6]

**4.** The modern forfeiture statutes grow out of a legal heritage in which objects considered "guilty" were held forfeit. At common law, the value of an inanimate object causing accidental death was forfeited to the King on the theory that the money would be used for masses for the dead man's soul. The origins of this practice are reputedly traceable to Biblical and pre-Judeo-Christian practices. *See Calero-Toledo v. Pearson Yacht,* 416 U.S. 663, 680–83 & nn. 16–20, 94 S.Ct. 2080, 2090–92 & nn. 16–20, 40 L.Ed.2d 452 (1974); *see also Exodus* 21:28 ("If an ox gore a man or a woman, that they die: then the ox shall be surely stoned, and his flesh shall not be eaten....").

**5.** When courts have held the conduct of the owner not irrelevant to a civil forfeiture, they

have generally considered whether the claimant was involved in, aware of, or should have been aware of the wrongful activity. *See United States v. One 1979 Datsun 280 ZX,* 720 F.2d 543, 544 (8th Cir.1983) (per curiam); *United States v. One 1973 Buick Riviera Automobile,* 560 F.2d 897, 901 (8th Cir.1977); Annot., 59 A.L.R.Fed. 765, § 12 (1982); *cf. Pearson Yacht,* 416 U.S. at 688–90 & n. 27, 94 S.Ct. at 2094–95 & n. 27; *United States v. One 1957 Rockwell Aero Commander 680 Aircraft,* 671 F.2d 414, 417–18 (10th Cir.1982); 21 U.S.C. § 881(a)(4)(B).

**6.** The Ninth Circuit has held unconstitutional under the Due Process Clause the new criminal forfeiture provisions for restraining orders or injunctions upon the filing of an indictment, *see*

Recognizing the due process implications of pre-indictment restraints on assets, Congress created significant procedural safeguards to accompany these new law enforcement tools. *See* S.Rep. No. 225 at 202–03, 213, *reprinted in* 1984 U.S. Code Cong. & Ad. News at 3385–86, 3396. Pre-indictment restraining orders may ordinarily be issued only after notice to interested parties and a hearing at which the Government bears a substantial burden of proof. If an indictment is not filed, such an order is effective for only ninety days unless extended by the court for good cause shown. 21 U.S.C.A. § 853(e)(1)(B). The Government may obtain an ex parte temporary restraining order only upon a probable cause showing that the property is subject to forfeiture and that provision of notice would jeopardize the availability of the property. *See id.* § 853(e)(2). Such an order is valid only for ten days. *Id.*

The Comprehensive Crime Control Act of 1984 and its legislative history evince Congressional awareness of the difference between civil and criminal forfeiture. In imposing rigorous standards upon the issuance of pre-indictment restraints on assets, Congress recognized that the Government bears a heavy burden when it focuses its law enforcement energies and resources upon a person and attempts to restrain his property prior to the filing of an indictment or information. The Act and its legislative history dictate that, in such circumstances,

criminal rather than civil forfeiture procedures are appropriate.

The Government concedes that it does not always honor this distinction. In its brief on appeal in the case against the Canadian currency, the Government states that, "[i]n many instances, like the instant one commenced by a Drug Task Force office, a forfeiture complaint is filed at an early stage in order to freeze a potential defendant's assets while the investigation continues." Brief of Appellant at 4. In our view, criminal forfeiture proceedings are the proper mechanisms to accomplish this purpose. Here the Government chose to deploy *in rem* civil proceedings when its action is punitive in nature and intended as a sanction against a person. The Government opted for civil proceedings, with relatively lax procedural protections, thereby circumventing the more stringent requirements of criminal forfeiture. Consequently, the Government may not be heard to urge considerations going to the criminal nature of the underlying circumstances.[7]

■ In sum, we hold that in order to comport with Rule E(2)(a)'s requirement of particularity, the complaint in a civil forfeiture action under section 881 must allege specific facts sufficient to support an inference that the property is subject to forfeiture under the statute.[8]

---

21 U.S.C.A. § 853(e)(1)(A), and the hearing provisions for those with third-party interests, *see id.* § 853(n). In the absence of valid procedural guidelines, the court held that Fed.R.Civ.P. 65 governs the restraining order. *See United States v. Crozier*, 777 F.2d 1376, 1382–84 (9th Cir.1985). The issue is not before us, and we express no view on the constitutionality of any of the criminal forfeiture provisions of 21 U.S.C.A. § 853.

7. Although the issue is not squarely presented in this case, the wholesale use of civil forfeiture proceedings causes us grave concern when the Government has clearly focused its law enforcement energies and resources upon a person and attempts to restrain his property in anticipation of formal criminal proceedings.

8. The sole issue before us is the particularity requirement of Rule E(2)(a) and its relation to the complaints in these cases. Defendants did not raise in the district court any question as to

the Fourth Amendment implications of seizing property under § 881, either with or without a warrant. These issues have been addressed by other courts. *See United States v. One Hundred Twenty-Eight Thousand Thirty-Five Dollars ($128,035.00) in U.S. Currency*, 628 F.Supp. 668 (S.D. Ohio 1986); *In re Kingsley*, 614 F.Supp. 219, 223 (D.Mass.1985) (appeal pending); *United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway*, 612 F.Supp. 1492, 1498 (S.D.Fla.1985) (seizures with a warrant; *see* § 881(b)). *See also United States v. One 1978 Mercedes Benz*, 711 F.2d 1297, 1300–02 (5th Cir.1983); *United States v. Bush*, 647 F.2d 357, 367–70 (3d Cir.1981); *United States v. 1979 Mercury Cougar*, 545 F.Supp. 1087, 1090 (D.Colo. 1982) (seizures without a warrant; *see* § 881(b)(4)). We express no opinion on these constitutional issues.

## III.

## COMPLIANCE WITH SUPPLEMENTAL RULES

Having determined the standard applicable to the Rule E(2)(a) pleading requirement, we turn next to whether the district courts erred in dismissing the complaints for failing to allege the underlying factual circumstances with sufficient particularity.

### A. The Canadian Currency

 The claim against the Canadian currency under section 881(a)(6) asserts the conclusion that the currency was "furnished or intended to be furnished by a person in exchange for a controlled substance, or are proceeds traceable to such an exchange...." Rec., vol. I, at 12. But the complaint fails to assert facts supporting a reasonable inference that the money was involved in a drug transaction. It specifies no date or location of any purported or intended exchange, no dollar amount of such an exchange, no specific type or quantity of controlled substance, and no identified participant. The complaint does allege that "Charles Duguet or confederates of Charles Duguet intended to convert the Canadian currency into U.S. dollars for the acquisition of controlled substances," *id.*, but does not identify Duguet as directly involved in this alleged drug deal. These claims of unidentified parties and unspecified conduct neither give a claimant a reasonable starting point from which to initiate a meaningful investigation nor permit a responsive pleading that can address identities, quantities, locations, or dates of an alleged offense. These unsupported and conclusory allegations do not meet any definition of the word "particularity."

In contrast, the Government's dismissed claim seeking forfeiture for a currency reporting violation under section 5317 was much more specific. It alleged that on a specific date, March 14, 1983, a particular individual, Duguet, appeared at particular banks, Intrawest and Colorado National, and converted or attempted to convert a specified amount of currency, approximately $39,000 Canadian. The complaint also

alleged that Duguet was unable to produce the required documentation, a Customs Form 4790. *See* rec., vol. I, at 1. Significantly, the section 5317 claim did not identify witnesses, informants, or Government agents, the method or location of any surveillance, or evidence that would be introduced in a forfeiture proceeding. Nonetheless, the claim presented precise and factual allegations of all the elements of a violation of section 5316, enabling a claimant to defend by marshaling evidence about the time, place, and location of the offense, the description of the currency, the identity of the violator, and the existence of the required customs form. The adequacy of the section 5317 claim undermines the Government's argument that mandating a factually specific and particularized claim would require disclosures adversely affecting further investigations.

### B. The Volvo

 The first claim against the Volvo, based on 21 U.S.C. § 881(a)(6), identifies the car and its registered owner, Carol Nanninga. The complaint alleges that, on or before February 8, 1984, Albert Stork was engaged in selling and distributing cocaine and marijuana, and that drug sale proceeds constituted a majority of Nanninga's and Stork's income. The claim concludes with the assertion that the Volvo "was purchased using proceeds traceable to exchanges for a controlled substance on and before July 18, 1983...." Rec., vol. I, at 2.

These allegations are unacceptably vague. The Volvo would be subject to forfeiture if it had been purchased with drug transaction proceeds, but no facts are given tending to show this is the case. The complaint fails to disclose the place of purchase, the purchase price, the form of payment, the seller, or even the purchaser. It neither identifies the proceeds used to purchase the car nor alleges that the proceeds were received by Stork, Nanninga, or both. Although the claim contends that drug deal proceeds constituted a majority of their

income, it does not assert that they had no income source other than drug deals.[9] Other than an intimation that Nanninga and Stork somehow shared joint income, nothing in the complaint specifically alleges any connection between them, or between Nanninga and any sale or distribution of illegal drugs. The claim simply asserts that Nanninga owns the car, that Stork sold and distributed drugs, and that the car was bought with unidentified proceeds from unidentified drug deals. These vague, incomplete, and disjointed accusations, and the lack of specific factual support for them, hinder a claimant from filing a meaningful response or marshaling facts in rebuttal, and do not support an inference that the property is subject to forfeiture. The claim, therefore, does not satisfy the requirements of Rule E(2)(a).

The second claim, based on section 881(a)(4), is even more devoid of factual support. Roughly tracking the language of the statute, it states only that the car was used, on or before October 14, 1983, "to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of ... cocaine...." Rec., vol. I, at 2. How or where the car was so used, or by whom, is left to the imagination.[10] The allegation that the transportation or facilitation occurred on or before October 14 is so overbroad as to be meaningless.[11]

In sum, the only conceivable response to these complaints' conclusory allegations is a general denial. Rule E(2)(a) requires a more specific complaint. To answer responsively or to investigate further an allegation that property was used in connec-

**9.** *See United States v. Certain Real Property Situated at Route 3, Box 247E, Mountain Home, AR.,* 568 F.Supp. 434, 436 (W.D.Ark.1983) (evidence that claimant had no income source but drug deals supports inference that property constituted illegal proceeds); *United States v. $131,-602.00 in U.S. Currency,* 563 F.Supp. 921, 923 (S.D.N.Y.1982) (although Government established probable cause that claimants' funds traceable to drug trafficking, claimants proved source of funds not traceable to such deals).

**10.** Not every involvement of a vehicle with a drug transaction triggers forfeiture under § 881(a)(4), and courts apparently disagree on the type and amount of involvement required. *Compare United States v. One 1976 Ford F-150 Pick-Up,* 769 F.2d 525, 527 (8th Cir.1985) (per curiam) (truck not proved to have facilitated possession of marijuana under § 881(a)(4) where claimant only once observed using it to inspect marijuana crop, no marijuana found in it, and therefore it was not shown to be "integral part" of drug operation); *United States v. One 1972 Chevrolet Corvette,* 625 F.2d 1026, 1028–30 (1st Cir.1980) (use of car to transport owner to prearranged meeting to collect money due from others' prior drug deals did not constitute "facilitation" of sale within meaning of § 881(a)(4), because car bore no antecedent relationship to sale and therefore could not have facilitated it); *and United States v. One 1974 Cadillac Eldorado,* 575 F.2d 344, 345 (2d Cir. 1978) (per curiam) (insufficient nexus between car and drug deal to warrant forfeiture under § 881(a)(4) where evidence showed dealer had possession of heroin before car arrived on scene), *with United States v. 1966 Beechcraft Aircraft Model King Air A90,* 777 F.2d 947, 953 (4th Cir.1985) (use of vehicle to transport conspirators to scene of drug sale subjects it to forfeiture under § 881(a)(4)); *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1427 (11th Cir.1983) (per curiam) ("substantial connection" existed between vehicle and criminal activity, and forfeiture proper under § 881(a)(4), where used to transport "pivotal figure" in drug deal several hundred miles to precise location where attempted deal occurred); *United States v. 1964 Beechcraft Baron Aircraft,* 691 F.2d 725, 727–28 (per curiam) (5th Cir.1982) (airplane forfeitable under § 881(a)(4) where used to transport raw materials for manufacture of amphetamine; stricter "substantial connection" test proper under § 881(a)(6) not applicable to § 881(a)(4)), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *and United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421, 426–27 (2d Cir.1977) (use of car to transport drug peddler or confederates to scene of sale or to meeting where sale proposed constitutes "facilitation" within meaning of § 881(a)(4)). *See generally* Annot., 59 A.L.R. Fed. 765 (1982). *Cf. Platt v. United States,* 163 F.2d 165, 167 (10th Cir.1947) (vehicle not forfeitable under statute making unlawful use of vehicle to facilitate purchase of contraband article where drug addict drove it to buy morphine). We have not had occasion to address the question under § 881(a)(4), and it is not before us now.

**11.** The complaint in *United States v. One 1982 Saab 900 Turbo,* seeking forfeiture under 21 U.S.C. § 881(a)(4) and (a)(6), is virtually identical to the § 881(a)(4) and (a)(6) claims against the Volvo, and suffers from the same defects.

tion with criminal activity, a claimant must have a point from which to begin. These complaints supply no starting point. More importantly, the allegations fail to supply a factual basis for a reasonable inference that the property is subject to forfeiture. The district courts, therefore, properly dismissed the complaints for failure to comply with Rule E(2)(a).

AFFIRMED.