**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

$189,825.00 (ONE HUNDRED
EIGHTY-NINE THOUSAND EIGHT
HUNDRED TWENTY-FIVE)
DOLLARS IN U.S. CURRENCY,

Defendant,

EDUARDO RANGEL VELAZQUEZ,
IVAN FARON VELAZQUEZ,

Claimants - Appellants.

No. 98-5227

(N.D. Oklahoma)

(D.C. No. CV-96-1084-J)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **ANDERSON** , and **LUCERO** , Circuit Judges.

---

The United States brought this civil *in rem* forfeiture action pursuant to 21

U.S.C. § 881(a)(6), seeking forfeiture to the government of $189,825.00 in U.S.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

currency found by Oklahoma Highway Patrol officers hidden in the gas tank of a Dodge pickup truck.

Eduardo Rangel Velazquez and Ivan Faron Velazquez, respectively, the driver of and passenger in the vehicle, appeared as claimants and opposed the forfeiture on the grounds: (1) that the search and seizure of the vehicle and currency were unreasonable in violation of the Fourth Amendment; (2) that the government's complaint did not satisfy the specificity requirement of Fed. R. Civ. P. Supp. E(2)(a); (3) that the government failed to prove probable cause to institute the suit, as required by 19 U.S.C. § 1615 because it did not establish the existence of a reasonable belief that the currency constituted "proceeds traceable" to a drug transaction within the meaning of 21 U.S.C. § 881(a)(6); and (4) the seizure would violate the Excessive Fines Clause of the Eighth Amendment.

The parties consented to have the case tried by a magistrate judge ("district court" or "court" hereafter), pursuant to 28 U.S.C. § 636(c). The court bifurcated the proceedings, first holding a three-day bench trial on the claimants' motion to suppress on Fourth Amendment grounds and on the issue of probable cause. The court decided against the claimants on those issues. Then the court proceeded to a jury trial on the merits. The jury found in favor of the government, and the court denied the claimants' Fed. R. Civ. P. 50 motion for judgment as a matter of law.

-2-

On appeal, the claimants do not contest the jury verdict but reassert each of the issues stated above, contending that the district court erred in its disposition of those issues and in denying judgment as a matter of law to the claimants. For the reasons stated below, we affirm. [1]

## BACKGROUND

The facts of this case are fully developed in the district court's published opinion, United States v. $189,825, 8 F. Supp. 2d 1300, 1303-07 (N.D. Okla. 1998). We refer here only to those facts that are relevant to our discussion of the issues, and consistent with standards that govern our review. That is, we accept factual findings by the district court unless they are clearly erroneous, and follow the court's credibility determinations. See United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999). With respect to the district court's denial of the claimants' motion to suppress evidence, we view the facts in the light most favorable to the government. See United States v. Villa-Chaparro, 115 F.3d 797, 800-01 (10th Cir. 1997).

On May 3, 1996, Oklahoma Highway Patrol Officer Larry Jackson stopped a 1996 Dodge Ram extended-cab pickup truck on Interstate 44 because the truck's

---

[1]We deny Claimants' motion to supplement the record with a photograph from a video tape of the truck. The district court denied the introduction of that evidence. We conclude that the court did not abuse its discretion.

driver, Eduardo Rangel Velazquez, changed lanes four times without signaling. The stop occurred between 7:20 a.m. and 7:30 a.m. Officer Jackson determined that neither Eduardo nor his passenger, Ivan Faron Velazquez, spoke English. Jackson escorted Eduardo to the patrol car where Jackson radioed his dispatcher for an interpreter, and showed Eduardo a driver's license, indicating his desire to see Eduardo's license. In response, Eduardo produced a restricted visa and Mexican driver's license, both written in Spanish and largely incomprehensible to Jackson. Jackson's radioed request for an interpreter was overheard by Officer Ron Davis, who responded that he had some Spanish speaking ability and, since he was in the vicinity, would endeavor to assist. He arrived on the scene in ten minutes or less.

While waiting for Davis, Jackson noticed that the truck's license plate frame was out of alignment and the left side of the truck's bumper appeared to be closer to the tailgate than the right side of the bumper. This aroused Jackson's curiosity. He walked around the truck and could not see any evidence of an accident that would cause the misalignments. He also smelled an odor of gasoline. Jackson also noted that the truck was fairly new, with approximately 20,000 miles on it. From his training, Jackson knew that Dodge extended-cab trucks were often used in drug trafficking because they have large gas tanks with

-4-

a six-inch opening for the "sending unit" through which, when the unit is removed, items can be placed in the gas tank.

Based on facts known to him at that point, Jackson suspected that the vehicle might be involved in drug trafficking. He therefore radioed his dispatcher for a canine unit to conduct at least an exterior sniff of the vehicle. Tulsa Police Department Officer Ronnie G. LeMaster, an experienced drug detection dog handler, arrived at the scene about 20-30 minutes later with a dog trained to alert on the odor of marijuana, cocaine, heroin or methamphetamine. While waiting for LeMaster, Jackson ran NCIC, EPIC and owner's registration checks on Eduardo and Ivan. Those checks showed that the vehicle was owned by Luciano Chavez of Austin, Texas.

For traffic safety reasons, Jackson moved the Dodge pickup to a parking lot less than a mile away at the next I-44 exit. At that point, LeMaster walked his dog around the truck twice. The dog alerted to the passenger side door both times. LeMaster then opened the door and the dog alerted on the floorboard and seat. LeMaster and Jackson then searched the truck, noting leaking gas, tampering with the support straps for the gas tank, and one broken strap. LeMaster also observed tool marks on several bolts, indicating to him that the bed of the truck had been on and off several times, a technique used to access the sending unit opening in the gas tank. Taps on the gas tank with a nightstick also

indicated the presence of a solid object that moved around when the truck was moved and stopped suddenly.

The officers then took the truck to a nearby filling station to raise it on a hoist for a more thorough inspection. That inspection disclosed further evidence that the truck bed had been on and off several times. Jackson then removed the gas tank and sending unit, which was not secured tightly, looked inside the opening that housed the sending unit, and observed several plastic bundles. Subsequently, the officers removed eleven bundles of currency from the tank. Each bundle was wrapped in three layers of cellophane, vacuum packed, and heat sealed. When counted, the currency totaled $189,825.00.

During these events, including the arrival of a more proficient interpreter, the officers determined that Eduardo and Ivan were from Mexico and were unlawfully in the Tulsa area. Both denied any knowledge of the hidden currency. Neither had a criminal record, as shown by the computer checks. No drugs were found in the vehicle.

## DISCUSSION

### A. Search and Seizure

The claimants contend that the district court erred when it denied their motion to suppress evidence of the currency and other evidence discovered after

their initial traffic stop. They argue that the detention and subsequent search were unreasonable in violation of the Fourth Amendment; thus, without the resulting evidence, they were entitled to judgment against the government on the forfeiture complaint.

Although this is a civil case, "the government will be barred from introducing evidence illegally seized in violation of the fourth amendment to prove a claim of forfeiture." United States v. $149,442.43, 965 F.2d 868, 872 (10th Cir. 1992). We analyze the Fourth Amendment issue here the same way and under the same authorities used in examining the stop and search of vehicles in criminal cases.

Our standard of review regarding the facts is set out above. The ultimate determination of reasonableness is a question of law that we review de novo. See Long, 176 F.3d at 1307.

The district court's opinion carefully and thoroughly analyzes this issue. See United States v. $189,825, 8 F. Supp. 2d at 1307-11. We adopt its analysis and reasoning, and conclude that the search and seizure here were reasonable.

By way of summary, the claimants conceded at argument that the initial stop was valid. That stop was, of course, limited to its purpose (a traffic violation), unless the officer developed, during the time permitted for the stop, reasonable suspicion of other illegal activity. See United States v. Soto-Cervantes, 138 F.3d

-7-

1319, 1322 (10th Cir. 1998). The validity of such suspicion is viewed from the standpoint of an experienced officer and based on the totality of the circumstances. See id.

The district court's findings regarding the unexplained misalignment of the bumper, the type of truck used to transport contraband in the gas tank, the odor of gas, the travel route, and other factors, justified the district court's conclusion that the officer's suspicion was reasonable and justified a limited further detention of the vehicle and its occupants for a brief additional period for a drug detection dog walk-around of the vehicle. Valid safety concerns further justified moving the vehicle a short distance to a parking lot off the highway.

Once the dog alerted to drugs, the officers had probable cause to search the vehicle. See United States v. Ludwig, 10 F.3d 1523, 1527 (10th Cir. 1993). Further probable cause to detain the truck and search the gas tank was developed at the scene by visual confirmation of tampering with the gas tank, evidence that the bed of the truck had been removed (a technique for accessing the opening for the sending unit), and the presence of gas leakage (indicating that the gas tank had in fact been accessed). [2] Removal to a nearby gas station for the purpose of

---

[2]The claimants argue that law enforcement advisories regarding the use of Dodge pickup trucks to transport contraband in their gas tanks referred to a model other than the one they were driving. Even if true, that fact would not vitiate the reasonableness of Jackson's good faith belief that the vehicle he was inspecting
(continued...)

continuing the probable cause search of the gas tank was proper, and the search there revealed the money.

This sequence of events did not violate the Fourth Amendment.


**B.     Specificity of the Complaint**

A complaint for forfeiture, such as that filed by the government in this case, must  "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able . . . to commence an investigation for the facts and to frame a responsive pleading."  Fed. R. Civ. P. Supp. E(2)(a).

We have construed that rule to require the allegation of "specific facts sufficient to support an     inference  that the property is subject to forfeiture under the statute."   United States v. $39,660 in Canadian Currency    , 801 F.2d 1210, 1219 (10th Cir. 1986) (emphasis added).

The claimants contend that the government's complaint in this case failed to satisfy these requirements.  The district court did not address the issue, and the parties dispute whether it was raised.  We think it was, although not pursued.  In any event, the complaint and attached affidavit filed in this case, included at Appellant's App. at 24-31, contain most of the information that we detail in the

_____

[2](...continued)
was the type referenced in the advisories.

next section of this opinion regarding probable cause. Those allegations unquestionably raise the necessary inference, which is short of showing probable cause. See United States v. Daccarett, 6 F.3d 37, 47 (2d Cir. 1993) ("complaint does not have to meet the ultimate trial burden of showing probable cause for forfeiture").

Furthermore, with respect to the basis for forfeiture that the government ultimately pursued in this case, the claimants do not demonstrate any material impediment to their ability to investigate or frame a responsive pleading. And, in fact, they did frame and file a full responsive pleading. Thus, we are unpersuaded by the claimants' arguments on this issue.

### C. Probable Cause that the Currency is "Proceeds" of a Drug Transaction

Congress has provided that the following shall be subject to forfeiture to the United States:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter . . . .

21 U.S.C. § 881(a)(6) (emphasis added).

Although the government pled more broadly in its amended complaint, [3] the government's case proceeded on the theory that the currency in this case constituted "proceeds" from a drug transaction within the meaning of § 881(a)(6). It is the allocation of the burden of proof in these cases that underlies the issue raised by the claimants as to the "proceeds" claim.

In forfeiture actions "the burden of proof shall lie upon [the] claimant . . . [p]rovided [t]hat probable cause shall be first shown for the institution of such suit or action, to be judged by the court." 19 U.S.C. § 1615 (emphasis added).

As to that requirement, we have said:

> [T]he Government bears the burden of going forward, and must show probable cause that the property subject to forfeiture is involved in criminal activity. Once this is established, the burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture.

$39,660 in Canadian Currency, 801 F.2d at 1216-17 (emphasis added).

The claimants contend that the government failed to establish probable cause that the money hidden in the gas tank constituted proceeds from drug trafficking, and that the district court erred in denying their Fed. R. Civ. P. 50 motion on this ground. In our analysis of this claim, we first emphasize the governing standards. As the district court points out, we have said:

---

[3]As the district court fully explains in its opinion, the government also invoked 31 U.S.C. §§ 5316, 5317(c), but did not pursue those claims, and only presented evidence on the "proceeds" theory under § 881(a)(6).

The test for determining probable cause for forfeiture purposes is the same as applied in arrests, searches and seizures. Accordingly, the government must demonstrate a <u>reasonable ground for belief</u> of guilt supported <u>by less than prima facie proof, but more than mere suspicion. Circumstantial evidence of drug transactions may support the establishment of probable cause</u>. However, <u>the presence or absence of any single factor is not dispositive</u>. Once probable cause for forfeiture has been established, claimants may recover the defendant property only by establishing a defense to forfeiture by a preponderance of the evidence.

<u>$149,442.43</u>, 965 F.2d at 876-77 (internal quotations, citations, and footnotes omitted) (emphasis added).

Contrary to arguments made by the claimants, the government is not required to show that the proceeds probably came from any particular drug transaction, or such details as the time, location, or amount per transaction. See <u>United States v. $36,634</u>, 103 F.3d 1048, 1053 (1st Cir. 1997); <u>United States v. $4,255,000</u>, 762 F.2d 895, 904 (11th Cir. 1985). The government is only required to establish probable cause as to a nexus between the proceeds and criminal drug activity. See <u>Daccarett</u>, 6 F.3d 37, 56 (2d Cir. 1993).

Applying these standards to the facts here, the district court found a reasonable belief "that the defendant currency is the proceeds of the sale of a controlled dangerous substance" based on the following:

1.      The money was hidden in the gas tank of a Dodge pickup truck. Dodge pickup trucks are frequently used by drug traffickers because the large gas tank and gas tank openings make it easy to conceal drugs and drug proceeds. Gas tanks are often used to conceal drug

-12-

proceeds because the gas and the tank help mask the odor of drugs.

2.     Mexico is a known transit zone for drugs headed to the United States from Central and South American countries and for drug proceeds headed to Central and South American countries from the United States.

3.     Several characteristics of the drug courier profile are present.

     a.     The truck was being driven by two Mexican nationals who did not have proper visas and who did not own the truck. The owner of the truck was not present and Claimants disavowed any knowledge of the currency when it was found in the truck's gas tank.

     b.     The truck was headed south on Interstate 44 from an interior state to Mexico, a border state. I-44 is known to law enforcement agencies as a drug pipeline or drug courier route.

     c.     The driver and passenger of the truck had been on a long trip allegedly for recreation, but only had a brief stay at their claimed destination before beginning the return trip.

     d.     Neither the driver nor the passenger had criminal records.

     e.     The truck was relatively new with high mileage.

     f.     There is some evidence to suggest that the bed of the truck had been on and off several times.

g.     It is common for there to be two passengers so that one can driver [sic] and one can sleep while the other is driving. This permits long distances to be covered in a short time.

4.     The large amount of currency involved.

5.     The fact that Officer LeMaster's drug-sniffing canine hit on the exterior and interior of the truck, indicating the presence of drugs in the truck at some time.

6.     The unique packaging of the currency – triple-wrapped in cellophane, heat-sealed and vacuum-packed. Agent Judd[4] testified credibly that out of the numerous currency seizures he has made, assisted or witnessed, the only currency he has seen packaged the way the defendant currency was packaged is currency that had some connection to drugs. Agent Judd testified that he had never seen currency packaged the same as the defendant currency that was not connected to drugs. According to Agent Judd, currency is packed the way the defendant currency was packaged for two reasons: two [sic] mask the odor of drugs and to prevent the cash from mildewing as the cash makes its way through the jungles of Mexico and Central and South America.

$189,825 , 8 F. Supp. 2d at 1313-14 (citations omitted).

To these facts we add the temporal proximity between the cash and drug transport in the same vehicle. The truck was only a few months old. The drug detection dog alert established the probability that during this relatively short time the truck was used to transport drugs and was being used at the time of the stop to

---

[4]Judd, a former FBI and Border Patrol agent, is assistant to the Drug Czar and advises the President on drug interdiction.

-14-

transport cash, wrapped and secreted in a manner consistent with drug money. Also during this short time, the truck had crossed into Mexico and had traveled long distances, consistent with its probable use in drug trafficking – an illegal business conducted for the money it produces.

The claimants rely upon numerous cases in which courts have denied forfeiture, concluding that the government did not establish probable cause. We have examined them all. None creates any bright line test relevant or controlling here. Each is clearly distinguishable on its facts. The law is that we determine probable cause based on the totality of the circumstances in each case. See United States v. United States Currency deposited in Account No. 1115000763247, 176 F.3d 941, 944 (7th Cir. 1999). That is necessarily a case-by-case, fact specific inquiry. In this case we conclude that, considering all the facts, the government established probable cause, i.e., a reasonable belief,[5] that the defendant currency is proceeds from drug trafficking within the meaning of the statute.[6] This reasonable

_____

[5]The claimants raise various arguments about when the government must possess the facts necessary for probable cause. The statute clearly refers to the institution of the suit. In any event, however, the claimants do not demonstrate that any material part of the facts relied upon by the district court was not known to the government when it filed its complaint for forfeiture.

[6]The claimants also argue that the term "proceeds" as used in § 881(a)(6) does not refer to money, citing Matthew Bender, "Prosecution and Defense of Forfeiture Cases," David B. Smith, ¶ 403 [4] (1999). They do not show where they raised this argument before the district court, and the court did not rule on it. We will not consider arguments raised for the first time on appeal. See Walker v.

(continued...)

-15-

belief was sufficient to shift the burden of proof to the claimants, as provided by the statute, to prove by a preponderance of the evidence that the defendant currency was not proceeds from drug trafficking.

### D.     Eighth Amendment Excessive Fines Provision

We have previously held that the forfeiture of drug proceeds does not violate the Eight Amendment.     See United States v. Lot 41, Berryhill Farm Estates    , 128 F.3d 1386, 1395-96 (10th Cir. 1977) (finding "as a matter of law that forfeiture of drug proceeds pursuant to § 881(a)(6) can never be constitutionally excessive" and noting that "proceeds produced by an individual drug trafficker is always roughly equivalent to the costs that drug trafficker has imposed on society"). Accordingly, we reject the claimants' argument on this issue.

## CONCLUSION

For the reasons stated above, the judgment of forfeiture is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[6](...continued)
Mather (In re Walker)   , 959 F.2d 894, 896 (10th Cir. 1992)    . In any event, we find the contention unpersuasive.