(INSTANCE COURT.)

### *The Samuel.*—Pierce *and* Beach, *Claimants.*

Prosecutions under the Non-Importation Laws are causes of admiralty and maritime jurisdiction, and the proceeding may be by libel in the admiralty.

Technical nicety is not required in such proceedings; it is sufficient if the offence be described in the words of the law, and so set forth that, if the allegation be true, the case must be within the statute.

*That the deponent is a seaman on board a gun-boat in a certain harbour, and liable to be ordered to some other place, and not to be able to attend the court at the time of its sitting,* is not a sufficient reason for taking his deposition *de bene esse,* under the judiciary act of 1789.

Where the evidence is so contradictory and ambiguous as to render a decision difficult, the court will order further proof in a revenue or instance cause.

APPEAL from the Circuit Court for the Rhode Island district. The brig Samuel sailed from St. Bartholomews, an island belonging to his majesty the king of Sweden, in the month of November, 1811, with a cargo consisting of rum, molasses, and some other articles, and arrived in Newport, Rhode Island, on the 8th of the following December, where the vessel and cargo were seized and libelled in the district court as being forfeited to the United States, under the act of congress prohibiting the importa-

tion of articles the growth, produce, or manufacture of Great Britain or France, their colonies or dependencies. The vessel and cargo were claimed by John Pierce and George Beach, both citizens of the United States. The district court condemned both vessel and cargo. The circuit court condemned the vessel and the *rum,* but restored the residue of the cargo. From the sentence of the circuit court both the libellants and the claimants appealed to this court.

*Daggett,* for the claimants, made three points:

1st. The proceedings ought to have been at common law, and not in the admiralty.

2d. The information is insufficient.

3d. The testimony was insufficient to warrant a condemnation.

1. The act of the 1st of March, 1809, on which this libel is founded, directs, that the penalties and forfeitures " shall be sued for, prosecuted, and recovered, with the costs of suit, by action of debt, indictment, or information." The cases under the authority of which this proceeding was brought are the Vengeance,[a] the Sally,[b] and the Betsey & Charlotte.[c] But the act under which the Vengeance was prosecuted was the same with the Collection Law of the 2d of March, 1799, section 89, which prescribed a proceeding in the admiralty; the Sally was prosecuted under the Slave Trade Act of the 23d of March, 1794, which indicates no particular proceed-

a. 3 *Dall.* 297.      b 2 *Cranch,* 406.      c 4 *Cranch,* 443.

ing; whilst the Betsey & Charlotte was prosecuted under the act of Non-Intercourse with St. Domingo, of the 28th of February, 1806, wherein no method of recovering the penalties was specified. Supposing this to be a civil cause of admiralty and maritime jurisdiction, and that the district court has jurisdiction of it as such, the proceedings may still be by information, as in the exchequer. Where a statute prescribes a particular remedy, or particular remedies, no other can be pursued.[d]—2. The statute is penal, and requires strictly accurate proceedings. The libel alleges, *generally*, that the cargo was laden on board in some foreign port. The cargo was stated to have belonged, in the alternative or disjunctive, to Pierce and Beach, *or* to one *Stillman*, or some other citizen, *or* consigned to one of said parties; and it was alleged that the offence was committed with " the knowledge of the owner *or* of the master."—3. The testimony of Oldham, a witness in the cause, was taken irregularly, and not used in the court below. The vessel and cargo were condemned upon the testimony of *tasters* only, against all the oral and documentary evidence. This testimony is novel; professional men and artists are credible witnesses in their own peculiar science or art; but this is matter of speculative opinion only, not of known art or certain science. The witnesses can never be made responsible for perjury. Their evidence is contradicted.

The *Attorney General*, for the libellants. 1. The

<hr />

[d] 2 *Burr.* 803. Rex v. Robinson. [e] 1 *Gallison*, 85. The *Bolina*.

1816.

The Samuel.

cargo could not have been the produce of St. Bartho-lomews, a sterile and unproductive island, used as St. Eustatius was during the war of the American revolution. It is more likely it was transhipped from a British than a Spanish colony; and, therefore, the claim is clouded with improbability. The case of the Odin may be invoked from the law of prize to show how little the fairest documentary evidence is to be regarded in comparison with the *evidentia rei.* Strip off this veil, and the *onus* is thrown upon the claimants, from which they cannot relieve themselves but by the strongest positive testimony. As to the evidence of the tasters, all our knowledge is derived through the senses. It is not unerring, but weighty; and the revenue laws rely upon it in collecting the duties on vines. The spirit and equity of the judiciary act of the 24th of September, 1789, were pursued in taking the deposition of Oldham; he was a seaman serving in the flotilla of gun-boats at Newport, and liable to be ordered to some other place. 2. It is novel doctrine that this is a *libel* as contradistinguished from an *information.* It is a libel in the nature of an information; and the process of information is used in the admiralty as well as in the exchequer. In alleging the offence, reasonable certainty only was necessary: the charge is insufficiently specific to have put the claimants on their guard; and to require more would be to prevent the conviction of offenders. The case of the Bolina does not apply to the present question.

*f* 1 *Rob.* 217.

*Daggett*, in reply. The deposition of Oldham      1816.
cannot be admitted, unless it be authorized by      The Samuel.
statute or common law; prize proceedings are pecu-
liar: soldiers and sailors are not excepted by the *let-*
*ter* of the Judiciary Act, and a class of exceptions
cannot be implied. The burthen of proof in fiscal
causes is not thrown on the claimants unless by po-
sitive law. There can be no difficulty in convicting
offenders, as these proceedings are amendable.[g]

MARSHALL, Ch. J., delivered the opinion of the      Feb. 12th.
court.

On the part of the claimants it is contended, 1st.
That the proceedings ought to have been at common
law, and not in the admiralty.    2d. That the informa-
tion, if it be one, is insufficient.    3d. That the testimo-
ny is wholly insufficient to warrant a condemnation.

In arguing the first point, the counsel for the
claimants endeavoured to take this case out of the

---

[g] 1 *Gallison*, 22. Anonymous.
The decision cited by the coun-
sel applies only to the power of the
circuit court to allow amendments
in revenue causes or proceedings
*in rem*, before appeal to the su-
preme court. But it may be in-
teresting to the reader to be in-
formed that the supreme court may
remand the cause to the court be-
low, with instructions to amend
the proceedings. Thus, in the
cases of the *Caroline* and the *Emi-*
*ly*, at February term, 1813, which
were informations *in rem* on the
Slave Trade Act of the 22d of
March, 1794, the opinion of the
court was, that the evidence was
sufficient to show a breach of the
law, but that the libel was not suf-
ficiently certain to authorize a de-
cree of condemnation. The fol-
lowing decree was, therefore, en-
tered: "It is the opinion of the
court that the libel is too imper-
fectly drawn to found a sentence
of condemnation thereon. The
sentence of the circuit court is,
therefore, reversed, and the cause
remanded to the said circuit court
*with directions to admit the libel*
*to be amended.*" *Vide infra*, The
Edward.

14

principle laid down in the Vengeance, and in other cases resting on the authority of that decision, by urging a difference of phraseology in the acts of congress. In that part of the act on which this prosecution is founded which gives the remedy, it is enacted, "that all penalties and forfeitures, arising under, or incurred by virtue of this act, may be sued for, prosecuted, and recovered, with costs of suit, by action of debt, in the name of the United States of America, or by indictment or information, in any court having competent jurisdiction to try the same." Debt, indictment, and information, are said to be technical terms designating common law remedies, and, consequently, marking out the courts of common law as the tribunals in which alone prosecutions under this act can be sustained. There would be much force in this argument, if the term "information" were exclusively applicable to a proceeding at common law. But the court is of opinion that it has no such exclusive application. A libel on a seizure, in its terms and in its essence, is an information. Consequently, where the cause is of admiralty jurisdiction, and the proceeding is by information, the suit is not withdrawn, by the nature of the remedy, from the jurisdiction to which it otherwise belongs.

2d. The second objection made by the claimants to these proceedings, is, that though the words of the act may be satisfied by a libel in the nature of an information, yet the same strictness which is required in an information at common law will be necessary to sustain a libel in the nature of an information in the court of admiralty; and that, testing the libel by this rule, it is totally insufficient. The court

1816.
The Samuel.

is not of opinion that all those technical niceties which the astuteness of ancient judges and lawyers has introduced into criminal proceedings at common law, and which time and long usage have sanctioned, are to be engrafted into proceedings in the courts of admiralty. These niceties are not already established, and the principles of justice do not require their establishment. It is deemed sufficient that the offence be described in the words of the law, and be so described that if the allegation be true the case must be within the statute. This libel does so describe the offence, and is, therefore, deemed sufficient.

3d. The third and material inquiry respects the evidence. Is this cargo of British origin?

In the examination of this question, the first point to be decided is the admissibility of the deposition of Thomas Oldham. That deposition is found in the record of the circuit court, with a certificate annexed to it, in these words: "N. B. The deposition of Thomas Oldham was filed after the trial of the case, by order of the court." Some of the judges are of opinion that this certificate of the clerk is to be disregarded, and that the deposition, being inserted in the record, must be considered as a part of it, and must be supposed to have formed a part of the evidence when the decree was made: but the majority of the court is of a different opinion. The certificate of the clerk to the deposition is thought of equal validity as if forming a part of his general certificate. It shows that this deposition formed no part of the cause in the circuit court, and is, therefore, liable to

every exception which could be made to it, if it was not found in the record, and was now offered for the first time to this court. On inspection, it appears to be a deposition taken before a single magistrate, not on order of court on a commission, with notice to the attorney of the claimant, who did not attend. It must be sustained by the act of congress, or it is inadmissible. The reason assigned for taking it is, " that the deponent is a seaman on board a gun-boat of the United States, in the harbour of Newport, and liable to be ordered to some other place, and not to be able to attend the court at the time of its sitting." The 30th section of the Judiciary Act directs, that " the mode of proof by oral testimony, and the examination of witnesses in open court, shall be the same in all the courts of the United States." The act then proceeds to enumerate cases in which depositions may be taken *de bene esse*. The liability of the witness to be ordered out of the reach of the court is not one of the causes deemed sufficient by the law for taking a deposition *de bene esse*. In such case there would seem to be a propriety in applying to the court for its aid. But, supposing this objection not to be so fatal as some of the judges think it, still the deposition is taken *de bene esse*, not in chief; and a deposition so taken can be read only when the witness himself is unattainable. It does not appear in this case that the witness was not within the reach of the court, and might not have given his testimony in open court, as is required by law. Had this deposition been offered in court, before, or at the time of the trial, and used without objection, the in-

ıerence that the requisites of the law were complied with, or waived, might have been justifiably drawn. But the party is not necessarily in court after his cause is decided, and is not bound to know the fact that this deposition was ordered to be filed. For these reasons it is the opinion of a majority of the court, that the deposition of Thomas Oldham ought not to be considered as forming any part of the testimony in this cause.

The deposition of Oldham being excluded, the prosecution rests chiefly on the depositions of Benjamin Fry and William S. Allen. These witnesses are both experienced dealers in rum; have both tast'd and examined the rum of this cargo, and are bot of the opinion that it is of British origin. In the pinion of all the judges, this testimony is entitled to g eat respect. The witnesses say that there is a clear difference between the flavour of rum of the British and the Spanish islands, though they do not attempt to describe that difference; and that their opinion is positive that this is British rum.

To weaken the force of this testimony, the claimants have produced the depositions of several witnesses, also dealers in rum, who declare, that the difference in the flavour of the best Spanish rum, and that of the British islands, is inconsiderable, and that they cannot distinguish the one from the other; that they believe the best judges find great difficulty in making the discrimination. This testimony would, perhaps, have been entitled to more influence, had the persons giving it tasted the rum imported in the Samuel, and declared themselves incapable of decid-

ing on its origin: for, although in some cases the difference may be nearly imperceptible, in others it may be considerable. The testimony, however, on which the claimants most rely is found in the deposition of Samuel Marshall and of Andrew Furntrad. Samuel Marshall, the brother of John and Joseph Marshall, merchants of St. Bartholomews, from whom the rum in question was purchased, deposes, that he has lived with them for two years, and had, at the time of giving his deposition, they being absent from the island, the care of their business. That the rum and molasses constituting the cargo of the Samuel were imported into St. Bartholomews from La Guira, in vessels which he names, and are of the growth and produce of that place. Andrew Furntrad is the collector of the port of Gustavia in St. Bartholomews, and deposes, that the quantity of rum and molasses which were laden on board the Samuel, and which cleared out regularly for New London, were regularly imported from La Guira in two vessels, which he names, whose masters he also names. They are the same that are mentioned by Samuel Marshall.

On this conflicting testimony much contrariety of opinion has taken place. The omission of the claimants to furnish other testimony supposed to have been within their reach, and of which the necessity would seem to have been suggested by the nature of the prosecution, impairs, in the opinion of several of the judges, the weight to which their positive testimony might otherwise be entitled. The court finds it very difficult to form an opinion satisfactory to it-

self. So situated, and under the peculiar circum-
stances attending Oldham's deposition, the majority
of the court is of opinion, that the cause be continued
to the next term for farther proof, which each party
is at liberty to produce.

1816.

The Samuel.

### Farther proof ordered.

h Revenue causes are, in their nature, causes of admiralty and maritime jurisdiction. In Great Britain all appeals from the vice-admiralty courts in those causes are within the jurisdiction of the high court of admiralty, and not of the privy council, which is the appellate tribunal in other plantation causes. This point was determined so long ago as the year 1754, in the case of the Vrouw Dorothea, decided before the high court of delegates, which was an appeal from the vice-admiralty judge of South Carolina to the high court of admiralty, and thence to the delegates. The appellate jurisdiction was contested upon the ground that prosecutions for the breach of the navigation and other revenue laws were not, in their nature, causes civil and maritime, and under the ordinary jurisdiction of the court of admiralty, but that it was a jurisdiction specially given to the vice-admiralty courts by stat. 7 & 8 Wm. III. ch. 22. s. 6., which did not take any notice of the appellate jurisdiction of the high court of admiralty in such cases. The objection, however, was overruled by the delegates, and the determination has since received the unanimous concurrence of all the common law judges, on a reference to them from the privy council. The proceeding in this case is called "a libel of information;" showing, that *libel* and *information* in the admiralty are synonymous terms. 2 *Rob.* 245. The Fabius.