**UNITED STATES of America,**
**Libellant,**

v.

**$5,372.85 UNITED STATES COIN AND CURRENCY: One Check in the Sum of $24.00, Drawn on the Chemical Bank-New York Trust Company, Issued by Sandow Holman, Payable to Cash.**

**No. 64 Ad. 31.**

United States District Court
S. D. New York.

April 22, 1968.

Robert M. Morgenthau, U. S. Atty., for libellant; Martin P. Solomon, Asst. U. S. Atty., of counsel.

Robert Mitchell, New York City, for claimants Rocco Cucino and Peter Cucino.

WYATT, District Judge.

This is a proceeding in rem by the Government under 26 U.S.C. § 7323(a) to enforce a forfeiture of property seized by Government agents and claimed to be subject to forfeiture under 26 U.S.C. § 7302. The property seized is $5,372.85 in United States coins and currency together with a check in the sum of $24 drawn on Chemical Bank New York Trust Company, issued by Sandow Holman and payable to cash.

This Court has jurisdiction under 26 U.S.C. §§ 7302, 7323 and 28 U.S.C. §§ 1345 and 1355.

The claim of the Government is that the property was used or intended to be used in violating the internal revenue laws against carrying on a gambling business without paying the special tax (26 U.S.C. § 4411) and without registering (26 U.S.C. § 4412).

It is unlawful to "possess any property intended for use in violating * * * the internal revenue laws, or which [property] has been so used". 26 U.S.C. § 7302. Such property, by the same section, is subject to seizure and forfeiture. Forfeiture is enforced by "a proceeding in rem" (26 U.S.C. § 7323; see also 28 U.S.C. §§ 1345, 1355). The statute does not specify the procedure to be followed in such proceeding.

A proceeding to enforce a forfeiture is a civil one, and not a criminal proceeding. Ames v. State of Kansas, 111 U.S. 449, 460–461, 4 S.Ct. 437, 28 L. Ed. 482 (1884).

In this country the earliest forfeiture proceedings for violation of law appear to have involved maritime matters, such as importation of goods by vessel contrary to law (The Hoppet, 7 Cranch. 389, 11 U.S. 389, 3 L.Ed. 380 (1813)) or using a vessel in the slave trade which trade was contrary to law (The Emily, 9 Wheat. 381, 22 U.S. 381, 6 L.Ed. 116 (1824)). The pleading to initiate the proceeding was early called an "information", doubtless because it charged a criminal offense and "information" since before the time of Blackstone was an accusation exhibited against a person for some crime (4 Blackstone Com. 308).

An early statute providing for forfeiture directed that the proceeding should be by "action of debt, indictment or information". A proceeding was commenced on the admiralty side, to which it was objected that it should have been at common law because debt, indictment, and information referred to common law remedies. But Chief Justice Marshall held that "information" had no exclusive application to common law because a "libel, on a seizure" was "in its terms and in its essence * * * an information". The Samuel, 1 Wheat. 9, 13, 14 U.S. 9, 13, 4 L.Ed. 23 (1816). The pleading initiating a proceeding in admiralty for a forfeiture came frequently to be called "a libel of information" as by Justice Story in The Palmyra, 12 Wheat. 1, 7, 25 U.S. 1, 7, 6 L.Ed. 531 (1827).

As statutes provided for forfeitures in other than maritime causes, the practice followed was to commence the proceedings in admiralty by a "libel of information" and for claimants to file claims under the admiralty practice for the property in question. The Supreme Court Admiralty Rules (now rescinded) dealt specifically (Rule 21) with "informations and libels of information upon seizures for any breach of the revenue * * * or other laws of the United States". Supreme Court Admiralty Rule 21 required that a libel of information state the *place* of seizure, whether on "land" or on "navigable waters". This is because in forfeiture proceedings, if the seizure was on land the proceeding—after jurisdiction obtained by libel of information in rem—was that of an action at law, with

right of jury trial, etc. 443 Cans of Frozen Egg Product v. United States, 226 U.S. 172, 180–183, 33 S.Ct. 50, 57 L.Ed. 174 (1912).

When the Federal Rules of Civil Procedure first became effective on September 16, 1938, Rule 81(a) (2) provided that "except to the extent that the practice * * * is not set forth in statutes of the United States" the Rules should not apply to proceedings for "forfeiture of property for violation of a statute of the United States".

Applying Rule 81(a) (2) it was held in a case of seizure on land that "except as to filing the libel and obtaining jurisdiction, admiralty procedure does not apply. A forfeiture proceeding, after these preliminaries takes the character of a law action" and is governed by the Federal Rules of Civil Procedure. Reynal v. United States, 153 F.2d 929, 931 (5th Cir. 1945); see also United States v. $3,976.-62 in Currency, etc., 37 F.R.D. 564 (S.D. N.Y.1965); United States v. 216 Bottles, etc., 36 F.R.D. 695, 698–699 (E.D.N.Y. 1965). The Advisory Committee Note to Rule 81(a) (2) in connection with the 1946 Amendments stated that *Reynal* was a "correct application" of the Civil Rules to forfeiture proceedings; this Note is quoted at 7 Moore's Federal Practice (2d ed.) 4413.

■ When the civil and admiralty procedures were unified by the amendments effective July 1, 1966, reference to forfeiture proceedings was deleted from Rule 81(a) (2) and the Supplemental Rules were made applicable to such proceedings (Rule A; "statutory condemnation proceedings" was meant to include forfeiture proceedings, see 7 Moore's Federal Practice 4439, 1967 Cum.Supp. 147–148).

■ Thus, forfeiture proceedings such as that at bar are now governed by the Supplemental Rules of the Federal Rules of Civil Procedure so far as applicable, otherwise by the Civil Rules generally.

The "libel of information" filed herein on January 13, 1964 alleges that on September 26, 1963 authorized officers of the Internal Revenue Service seized the property in suit at the Ace Cigar and Stationery Store, 58 Centre Street, New Rochelle, New York (a location within the Southern District of New York). The libel further alleges that forfeiture under 26 U.S.C. § 7302 is proper in that the property was used or was intended for use by Rocco Cucino in the conduct of a business of accepting ·wagers without having paid the occupational tax required by 26 U.S.C. § 4411 and without having registered as required by 26 U.S.C. § 4412.

Rocco Cucino filed a claim to a part of the property, alleging that he is the owner of $1,757.85 of the currency and coins together with the $24 check and that the property was "not an instrument of any crime or evidence of any crime".

Peter Cucino filed a claim to the remainder of the property, alleging that he is the owner of $3,591 of the currency and that it was "not an instrument of any crime or evidence of any crime". Answers were filed by Rocco Cucino and by Peter Cucino praying that the libel be dismissed.

■ As seen from the earlier discussion, the proceeding was a civil action at law, this because the seizure was on land. A jury trial could have been had on proper demand. Fed.R.Civ.P. 38(b). No party served such a demand.

Trial was to the Court on March 20 and 21 and April 18, 1968.

The facts found are as follows.

On the morning of Thursday, September 26, 1963, at about 11 o'clock, Juliano, an undercover agent of the Internal Revenue Service, entered the Ace Cigar and Stationery Store at 58 Centre Avenue in New Rochelle, and placed a $5 "policy" bet with Rocco Cucino, the owner of the store. Juliano covered the bet with a marked $10 bill and received a $5 bill in change. The wager was the fourteenth such wager placed by Juliano with Rocco during the period beginning August 29, 1963.

At approximately 11:45 a. m., four other agents entered the store with a

warrant of arrest for "Richard Roe No. 5, a/k/a 'Rocky'" on a complaint charging violation of 26 U.S.C. § 4411 (accepting wagers without paying the special tax). Agent Kurtzuk arrested Rocco. The agents then asked Rocco for permission to search the store. Permission was refused, Rocco stating that he wanted to telephone his attorney. At this point Peter Cucino, Rocco's brother, who had been just outside the store, came inside. Peter telephoned Rocco's attorney, Judge Fasso. Both Agent Kurtzuk and Rocco spoke with Judge Fasso, who informed Kurtzuk this his client would not permit a search of the premises. At the conclusion of the telephone conversation, Agent Kurtzuk ordered the other agents to search both Rocco and the store; this was done.

After searching the person of Rocco and the store, Rocco was then asked to open a safe located in the rear of the front room comprising the public area of the store. Rocco replied that he did not know the combination, that he had forgotten it, but that his brother Peter could open the safe. Peter was asked to open the safe. Peter then advised Agent Kurtzuk that approximately $3100 in currency in the safe belonged to him. Peter returned to his awning store located nearby, to get the combination according to him, and then came back and opened the safe by working the combination. The agents then seized property from within the safe.

I find from the evidence that the currency and coins seized on September 26, 1963 is in the total amount of $5,372.85 of which $5308 is in currency and $64.85 is in coins. I find that $1757.85 in currency and coins was seized from places in the store outside the safe and that $3615 in currency and coins was seized from the safe.

I find that the places from which property was seized in the store and not from the safe were, with the respective amounts there seized, as follows:

| | | |
|---|---|---|
| a. | from the person of Rocco, wallet, loose in pockets, etc. | $1,269 |
| b. | from cash register | 210 |
| c. | from on top of cash register | 12 |
| d. | from a drawer behind the counter | 156 |
| e. | from "cigar box under cigar display on top of front counter" | 92 |
| f. | from "cigar box in closet behind counter" | 18.85 |
| | | $1,757.85 |

———◆———

The quoted descriptions in e. and f. above are from the memorandum of Agent Borak made the day after the seizure.

It is clear that the marked $10 bill, unquestionably used in violation of law, was found in one of the two cigar boxes, but which one it is difficult to say. It is a reasonable inference that the marked $10 bill was put by Rocco with other moneys collected as bets or connected with bets, either as commission to Rocco, pay-offs, or otherwise. A memorandum of Agent Dunn, apparently made shortly after the seizure, states that the marked bill was found "in a cigar box located in a wooden shelf container on top of the cigar counter adjacent to the cash register". While not clear, this seems to point to box e. rather than box f. Agent Borak testified that the marked bill was found "in a cigar box behind the counter". Agent Kurtzuk, looking at the memorandum of Agent Dunn, testified that the marked bill was found "on a shelf in back of the counter in a cigar box"; later he repeated this testimony word for word; still later he testified

that the marked bill was found "in a cigar box situated in the back counter".

The evidence does not permit any inference that Rocco was in the wagering business on a large scale. The only equipment seized which might be directly connected with wagering was "numerous scratch sheets and dream books" and "pads with names and amounts written thereon", according to the detailed September 27, 1963 memorandum of Agent Borak. The only such equipment introduced in evidence was process copies of eight pieces of paper, seven of which appear to be betting slips for amounts aggregating apparently $16.02; the other paper relates to betting but whether it represents a bet and, if so, for how much is uncertain.

Considering all the evidence, I conclude that, as the Government contends (Memo, p. 17), the marked $10 bill was found in the cigar box which contained a total of $92 and which is described in e. above.

The state of the evidence is such that it is also difficult to describe the places within the safe from which the property was seized. The currency and coins when seized were put in separate envelopes, one for each different place, and a description of the place written on each envelope; these separate envelopes were destroyed by the agents after the criminal proceedings against Rocco were terminated by his plea of guilty.

I find that $2000 in currency was found in the safe in a compartment or "metal box" (apparently something like a safe deposit box) which was locked and could only be opened by a key carried by Peter, who opened it for the agents on September 26; that $1100 in currency was found in a cigar box in the safe; that $78 in $2 bills was found in the safe; and that $437 in currency and coins and the $24 check were found in a bank deposit bag along with a bank book of Rocco for the cigar store.

■ I find that on and before September 26, 1963 Rocco was engaged in activities in violation of law, namely, that he was in the business of accepting wagers and had not paid the special tax imposed by 26 U.S.C. § 4411 and had not registered as required by 26 U.S.C. § 4412.

The sole issue is one of fact, whether the property seized had been used, or was intended to be used, in the illegal wagering activities of Rocco.

■■ The burden of proof on this issue is on the Government. It was suggested at oral argument for the Government that if a prima facie case on the facts be made out by the Government, the burden of proof somehow shifts to claimants; reference was made to decisions cited in the Government's memorandum. There is no such "shift" in the burden of proof. The cases cited, such as United States v. Leveson, 262 F.2d 659 (5th Cir. 1959), were cited for the proposition stated in the Government's memorandum (p. 7) that once a prima facie case is made out "the burden is upon the claimant to come forward with countervailing evidence, and unless he does so the Government is entitled to prevail". This may be a correct statement of law but is wholly inapplicable here because claimants came forward with "countervailing evidence", including their own testimony (Peter by deposition, by agreement).

■ I find that the $3100 seized from the locked compartment and from the cigar box in the safe belongs to Peter, that the Government has not shown that this currency was used or intended for use in violation of law, and that this $3100 in currency should be returned to Peter.

I find that all the other seized property belongs to Rocco.

I find that the Government has sustained its burden of proof as to the $92 in currency found in "cigar box under cigar display on top of front counter" (again quoting from Agent Borak's memorandum) and consequently there should be a judgment of forfeiture of said $92.

I find that the Government has not sustained its burden of proof as to the remainder of the property seized and that there should be judgment directing its return to Rocco. The special problem concerning the $24 check can be provided for in the judgment to be entered herein.

The above contains the findings of fact and conclusions of law required by Fed. R.Civ.P. 52(a).

Settle judgment on notice.