**UNITED STATES of America, Plaintiff,**

v.

**Frederick Robert SCHMALFELDT, Ronald Dwayne Schmalfeldt, Ivan Tibbs, Jorge Armando Clavijo-Sanchez, Luis Humberto Angarita Garzon, Jaime Gaviria, Hector Rios, a/k/a Erick Rivas, Fabio Henao-Buitrago, a/k/a Ignacio Gonzalez, Defendants.**

**No. G86–86.**

United States District Court,
W.D. Michigan, S.D.

April 3, 1987.

John A. Smietanka, U.S. Atty., Richard S. Murray, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff U.S.

John A. Field, III, Alexandria, Va., Kevin P. Burch, Kalamazoo, Mich., Anthony J. Valentine, Grand Rapids, Mich., Thomas W. McCoy, St. Joseph, Mich., Akhtar Hussain, Miami, Fla., Robert F. Mirque, Deno Fotieo, Grand Rapids, Mich., Michael R. Kien, Chicago, Ill., Rodolfo Sorondo, Jr., Coral Gables, Fla., for defendants.

## OPINION

ENSLEN, District Judge.

Defendant Frederick Robert Schmalfeldt was indicted on July 31, 1986, in a single count indictment without forfeiture language. On October 23, 1986, the grand jury returned a superseding indictment against him alleging that two parcels of real estate known as the "front farm" and the "back farm" (legal descriptions omitted) were forfeitable under 21 U.S.C. § 853(a)(2) which provides in relevant part that:

(a) Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

. . . . .

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. . . .

The Government states that about the same time as the above steps were taken by the grand jury in the Western District of Michigan, the Drug Enforcement Administration (DEA) in Washington began administrative civil forfeiture proceedings under 21 U.S.C. § 881(a)(7) against the front and back farms. (Defendant states that the superseding indictment was returned *after* the initiation of the civil forfeiture action and that on October 27, 1986, the DEA advised the movant and other defendants that the civil forfeiture action was underway). In either event, Section 881(a)(7) provides in relevant part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

(7) All real property, including any right, title and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

On February 17, 1987, the federal jury in this matter returned a verdict of guilty as to the conspiracy charges (Count 1 of the indictment) against the movant, defendant Frederick Robert Schmalfeldt, and acquitted him on the charges relating to Counts 2 and 3 of the indictment.

The matter is before the Court on defendant Frederick Robert Schmalfeldt's motion to dismiss the *criminal* forfeiture pursuant to 21 U.S.C. § 853 of certain property (the front and back farms) on two grounds. First, the defendant argues that civil forfeiture proceedings previously initiated by the Government under 21 U.S.C. § 881 bar criminal forfeiture proceedings under 21 U.S.C. § 853 in that such concurrent "duplicative" proceedings are violative of due process and fundamental fairness. Second, defendant argues that the failure of the jury to find him guilty of Counts 2 and 3 of the indictment bars the criminal forfeiture of the property in question under 21 U.S.C. § 853.

The Court observes at the outset that Congress enacted 21 U.S.C. § 881 in the same year as it enacted the Racketeer Influenced and Corrupt Organization's Act (RICO) and Continuing Criminal Enterprise (CCE) statutes, and for essentially the same purpose: "to deal in a comprehensive fashion with the growing menace of drug abuse in the United States." 1970 U.S. Code Cong. & Ad.News 4567.

However, while RICO, CCE, § 853 are basically criminal in nature and proceed *in personam,* section 881 is civil in nature and proceeds *in rem.* Significantly, the burden of proof for the Government under section 881 is merely "to demonstrate probable cause [that] a substantial connection exists between [the property in question] and the relevant criminal activity." *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424 (11th Cir.1983). Once the Government has established probable cause for the "substantial connection," the burden shifts to the claimant to show by a preponderance of the evidence that no nexus exists between the property and a violation of the law. *United States v. $2,500.00 in United States Currency,* 689 F.2d 10 (2d Cir.1982).

The theory of criminal forfeiture is completely different from that of civil forfeiture in that because a criminal forfeiture is *"in personam",* its provisions operate as an additional penalty against the defendant. The distinguishing characteristic of criminal forfeiture is that, unlike the *in rem* character of civil forfeiture, the personal guilt of a defendant is at issue. *See United States v. Long,* 654 F.2d 911 (3d Cir.1981).

The Court notes that prior to the enactment of the recent RICO, CCE, and § 853 statutes, criminal forfeiture statutes have been virtually unknown in this country. In fact, prior to RICO, *et al.,* since 1790 criminal forfeiture had actually been *prohibited* in the United States. *See* Act of April 30, 1790, Section 24, 1 Stat. 112, 117; *see also United States v. Rubin,* 559 F.2d 975, 991 n. 15 (5th Cir.1977), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979). The only exception was the Confiscation Act passed by the Radical Republican Congress in 1862 which authorized President Lincoln to forfeit the property of Confederate sympathizers. While the President doubted its constitutionality, the statute was ultimately upheld by the Supreme Court, not on the basis that criminal forfeitures were generally constitutional, but rather because the statute had been passed by virtue of Congress's War Powers. *See United States v. Veon,* 538 F.Supp. 237 (E.D.Calif.1982). Significantly, Article III, § 3 of the Constitution prohibits forfeiture of estates resulting from a conviction for treason, although "forfeitures of estates for the lifetime of a traitor have been sanctioned, *see Wallach v. Van Riswick,* 92 U.S. [2 Otto] 202, [23 L.Ed. 473] (1876)." See *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, 94 S.Ct. 2080, 2091, 40 L.Ed.2d 452 (1974).

To date, both the RICO and CCE statutes have survived constitutional challenges in the Second, Third, Fifth, and Ninth Circuits. *See United States v. Boylan,* 620 F.2d 359, 360–361 (2d Cir.), *cert. denied,* 450 U.S. 980, 101 S.Ct. 103, 66 L.Ed.2d 38 (1981); *United States v. Long,* 654 F.2d 911, 914–915 (3d Cir.1981); *United States v. Hawkins,* 658 F.2d 279, 285–288 (5th Cir.1981); *United States v. Brooklier,* 637 F.2d 620, 621 (9th Cir.1980).

The Court notes, in passing, that civil statutes which allow the Government to proceed *in rem* against some illicit inanimate object appear to have their historical

roots in the concept of the deodand. "Deodand (L. Latin *Deo dandum*, a thing to be given to God.) In English Law, any personal chattel which was the immediate occasion of the death of any reasonable creature, and which was forfeited to the crown to be applied to pious uses, and distributed in alms by the higher almoner." Black's Law Dictionary 392 (5th ed. 1979).

Oliver Wendell Holmes observed that "[a]s long ago as Bracton, in case a man was slain, the coroner was to value the object causing the death, and that was to be forfeited as deodand 'pro rege.' It was to be given to God, that it is to say the Church, for the king, to be expended for the good of his soul. A man's death had ceased to be the private affair of his friends as in the time of the barbarian folk-laws. The king, who furnished the court, now sued for the penalty. He supplanted the family in the claim on the guilty thing, and the Church supplanted him." O.W. Holmes, *The Common Law* at 24 (47th Printing of Little, Brown, and Company, 1923).

The deodand was, of course, an "accused thing." Holmes tells us that in its most rudimentary form, "vengeance, not compensation, and vengeance on the offending thing, was the original object [of the use of the deodand]. The ox in Exodus was to be stoned. The axe in the Athenian law was to be banished. The tree ... [from which a man fell] ... was to be chopped to pieces." *Id.* at 34.

The concept of the deodand has been transformed by the historical process. A more secular society has substituted another sovereign, the government—in a democratic society an expression of the will of the people—for the Church and the Crown. Thus forfeited property is no longer "applied to pious uses, and distributed in alms by the high almoner," but rather it may, under appropriate circumstances, be either sold, destroyed, or retained for official use by the Attorney General. *See* 21 U.S.C. § 881(e). (The Court also notes—as a commentary on the rise of the bureaucratic state—that the statute also requires that the proceeds of any forfeiture be used to pay all proper expenses of the forfeiture proceedings themselves.) *Id.*

Moreover, modern notions of responsibility and liability have expanded the concept of forfeiture beyond the province of homicide—and as the RICO, CCE, and even the § 881 forfeiture provisions seem to attest—conflated the fundamental impulses of vengeance and compensation. *See e.g., United States v. Lot No. 50, as Shown on Map of Kingsbury Village, Unit 5, etc.,* 557 F.Supp 72 (D.Nev.1982) (noting that although § 881 is civil in form it serves to punish those engaging in illegal drug trafficking and narcotic activity). Other courts have observed that "penalty" is substantially synonymous with the word "forfeiture." Both indicate a punishment for violation of the law. *See United States v. Batre,* 69 F.2d 673 (9th Cir.1934). *But see United States v. $2,500 United States Currency,* 689 F.2d 10, 14 (citing remedial purpose of equipping and financing law enforcement activities and noting that § 881 does not tie the amount of loss suffered by forfeiture to the degree of culpability thus suggesting that any punitive effect is only incidental).

And yet, curiously, in order for a defense of "innocent ownership" in a § 881 forfeiture proceeding to succeed, the Supreme Court has held that a claimant must demonstrate "not only that he was uninvolved in and unaware of the wrongful activity, but also that *he had done all that could be reasonably expected to prevent the proscribed use of his property.*" *Calero-Toledo,* 416 U.S. at 689–690, 94 S.Ct. at 2095 (*emphasis added*).

Although deodands never became part of the common-law tradition of this country, at English common law an "innocent owner" could escape the harshness of a deodand or felony forfeiture. For example, an individual whose property was stolen by a thief and forfeited to the crown as a result of the thief's conviction could bring a writ of restitution to reclaim the property. *See* 2. F. Pollock & F. Maitland, History of English Law 165–166 (2d ed. 1909) *cited in Calero-Toledo,* 416 U.S. at 689, n. 27, 94 S.Ct. at 2095, n. 27.

Further, "it seems clear from ancient authorities, that jurors always determined the amount of deodand to be imposed with great moderation, and with a due regard to the rights of property and the moral innocence of the party incurring penalty. Our ancestors seem to have fully perceived the hardship of inflicting such penalty on one who had been guilty of no moral or indeed legal offence; and in all cases, therefore where death was purely the result of accident, and not of negligence, or carelessness, imposed a nominal fine, or found that only to be the deodand which by its immediate contact occasioned death." Law of Deodands, *supra*, n. 18, at 190 *cited* in *Calero-Toledo*, 416 U.S. at 689, n. 27, 94 S.Ct. at 2095, n. 27.

In this country, since 1790, the Federal Government has provided administrative remissions and mitigations of statutory (civil) forfeitures where the violations are incurred "without willful negligence or an intent to commit the offense." (statutory citation omitted) *cited* in *Calero-Toledo*, 416 U.S. at 689, n. 27, 94 S.Ct. at 2095, n.27.

However, the primary concept of the legal personification of property used in violation of the law has had *its critics from the earliest times*. *See* 1 W. Blackstone, Commentaries, c. 8 * 300 (seizure of innocent person's property a "superstition" from the "blind days" of feudalism) *quoted* in *United States v. United States Coin & Currency*, 401 U.S. 715, 720–21, 91 S.Ct. 1041, 1044, 28 L.Ed.2d 434.

Still, in its crusade against the "growing menace of drug abuse in the United States," Congress, through section 881, has authorized that many different forms of property are now subject to seizure: raw materials, controlled substances, equipment, containers, all conveyances [of property related to controlled substances] including aircraft, vessels and vehicles; records, books, formulas, microfilm and other items of research. Further, under section 881(a)(6) "moneys, negotiable instruments, securities, or other things of value" are forfeitable. Significantly, the forfeiture provisions even extend to "all proceeds traceable" to an illicit exchange of controlled substances. *See* 21 U.S.C. § 881(a)(6).

Finally, the Government states that "further" *civil* proceedings, would begin with the filing of a complaint by the U.S. Attorney for the Western District of Michigan under Rule C(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims, but cautions that *it has not yet taken that step*. This follows from the fact that when property is used in or connected with the act subjecting the property to forfeit, forfeiture immediately takes place and the right to the property vests in the Government. However, its title is not perfected until judicial condemnation proceedings are completed and the transfer of property relates back to the time of the act out of which the forfeiture arises. 21 Am Jr.2d. *CUSTOMS DUTIES, ETC.*, § 125 (1981).

One has to ask out of curiosity—if the Government had chosen to initiate judicial condemnation proceedings, why must it then proceed under the Admiralty and Maritime Rules? One should remember that in that case the Government would be proceeding under § 881—the civil forfeiture statute. The defendant attempts to provide a "practical" answer by, in essence, suggesting—as the statute itself does seem to imply—that the procedures involving civil and criminal forfeitures are essentially the same. Defendant suggests that when Congress enacted 21 U.S.C. § 853 permitting the forfeiture of property upon the *criminal* conviction of any person violating 21 U.S.C. § 801 *et seq.*, it expressly provided that provisions of section 881(d) (the civil forfeiture statute) shall apply to a criminal forfeiture thereby *perpetuating the established practices and procedures of the customs laws. See e.g., United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1114 (1st Cir.1975) (noting that "[f]orfeiture proceedings arising out of drug offenses are governed by the same statutory provisions as apply to customs forfeitures.")

At least one court, however, has expressed great caution in applying the "pro-

cedural" provisions of civil forfeitures to criminal forfeitures and has suggested that employing *in rem* procedures for a criminal proceeding would raise substantial constitutional questions. *See United States v. Veon*, 538 F.Supp. 237, 242 n. 2 (E.D.Calif. 1982) (noting the distinct differences of character between criminal and civil procedures and suggesting that it is the historic *in rem* characterization which "permits admiralty forfeitures, and civil forfeitures in general, to escape the stricture of the due process provisions of the fifth amendment.") (other citations omitted).

Beyond this, courts have held that while the Government may spend a reasonable amount of time investigating and processing petitions for remission of the forfeiture before initiating the proceedings in district court, where the delay is "unreasonable" —a finding of fact made by the district court—they have found that the statute has not been complied with and that the delay works an unconstitutional deprivation of the [true] owner's property rights. *See e.g., One Motor Yacht Named Mercury*, 527 F.2d 1112 (1st Cir.1975) (upholding district court's dismissing of forfeiture proceedings against a yacht allegedly transporting marijuana where 12 and 1/2 month delay existed between the date of seizure and the initiation of forfeiture proceedings).

To whatever extent § 881(d) (the civil forfeiture statute) can be said to apply to a criminal forfeiture, and, in turn to perpetuate the established practices and procedures of the customs laws, on the theoretical level, Holmes's teachings remind us that it is undoubtedly more than historical accident or a "practical" extension of the customs laws that this *in rem* proceeding would take place, or at least begin, under the Admiralty and Maritime Rules. He explains that although the concept of forfeiture was nurtured and developed in the criminal law, it has received an even more exhaustive treatment in Admiralty. *Id.* at 26. He tells us "[a] ship is the most living of inanimate things ... every-one gives a gender to vessels.... It is only by supposing the ship to have been treated as if endowed with personality, that the arbi-

trary seeming peculiarities of the maritime law can be made intelligible, and on that supposition they at once become consistent and logical." *Id.* at 26–27.

One court has traced in great detail the history of the modern Admiralty Rules as they relate to forfeitures.

[i]n this country the earliest forfeiture proceedings for violation of law appear to have involved maritime matters, such as importation of goods by a vessel contrary to law (citations omitted) or using a vessel in the slave trade which trade was contrary to law (citations omitted). The pleading to initiate the proceeding was early called an 'information,' doubtless because it charged a criminal offense and 'information' since before the time of Blackstone was an accusation exhibited against a person for some crime (4 Blackstone Com. 308).

[When an early statute provided that a forfeiture proceeding be commenced on the admiralty side, it was argued that such proceedings should be brought at common law since debt, indictment, and information referred to common law remedies]. But Chief Justice John Marshall held that 'information' had no exclusive application to common law because a 'libel on a seizure' was in its terms and in its essence ... an information. (citation omitted). The pleading initiating a proceding in admiralty for a forfeiture came frequently to be called 'a libel of information' as by Justice Story in *The Palmyra*, (1827) (citation omitted).

As statutes provided for forfeitures in other than maritime causes, the practice followed was to commence the proceedings in admiralty by a 'libel of information' and for claimants to file claims under the admiralty practice for the property in question. The Supreme Court Admiralty Rules (now rescinded) dealt specifically (Rule 21) with 'information and libels of information upon seizures for any breach of the revenue ... or other laws of the United States.'

When the Federal Rules of Civil Procedure first became effective on September 16, 1938, Rule 81(a)(2) provided that 'ex-

cept to the extent that the practice ... is not set forth in statutes of the United States' the Rules should not apply to proceedings for 'forfeiture of property for violation of a statute of the United States.'

Applying Rule 81(a)(2) it was held in a case of seizure on land that 'except as to filing the libel and obtaining jurisdiction admiralty procedure does not apply. A forfeiture proceeding, after these preliminaries takes the character of a law action' and is governed by the Federal Rules of Civil Procedure. (citations omitted) ...

When the civil and admiralty procedures were unified by the amendments effective July 1, 1966, reference to forfeiture proceedings was deleted from Rule 81(a)(2) and the Supplemental Rules were made applicable to such proceedings (citations omitted).

*United States v. $5,372.85 United States Coin and Currency,* 283 F.Supp. 904, 905–906 (S.D.N.Y.1968).

Beyond this, the Supplemental Rules for Certain Admiralty and Maritime Claims specifically apply to "the procedure in statutory condemnation proceedings analogous to maritime actions *in rem,* whether within the admiralty and maritime jurisdiction or not." Fed.R.Civ.P., Supp. Rule A. *See also United States v. Fourteen (14) Handguns,* 524 F.Supp. 395, 397 (S.D.Tex.1981) (Supplemental Rules apply to statutory condemnation proceedings involving seizure on land). In summary, forfeiture proceedings such as those under section 881 are now governed by the Supplemental Rules of the Federal Rules of Civil Procedure insofar as they are applicable, otherwise the Civil Rules govern.

The Court observes that in modern times forfeiture has been considered, in general, a harsh proceeding and has been disfavored. *See United States v. One 1957 Rockwell Arrow Commander Aircraft,* 671 F.2d 414 (10th Cir.1982); *United States v. One 1977 Cadillac Coupe DeVille,* 644 F.2d 500 (5th Cir.1981); *Superior Oil Co. v. Devon Corp.,* 604 F.2d 1063 (8th Cir. 1979). Therefore, it is sometimes said that

forfeiture statutes are interpreted in favor of individuals whose property is affected and strictly construed against the Government. *United States v. Jenison,* 484 F.Supp. 747 (D.R.I.1980); *See also United States v. Rubin, vacated and remanded on other grounds,* 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978); *on remand,* 591 F.2d 278 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979) (an early RICO decision holding that *in personam* forfeiture provisions of RICO are subject to strict scrutiny).

However, in the present context, the defendant himself recognizes that "Congress has forged weapons to pierce the very heart of the dealer's motive for profit" and "that federal rules encourage enforcement officials to literally strip the satin shirts off the backs of narcotics dealers." Defendant's Brief in Support of Motion to Dismiss at 3. Indeed, 21 U.S.C. § 853(*o*) specifically provides that "[t]he provisions of this section shall be *liberally construed to effectuate its remedial purposes."* (emphasis added).

Defendant concedes that persons swept up in Congress's various forfeiture dragnets may be the same persons. However, defendant notes that the Government is seeking the same property by criminal and civil forfeiture proceedings. Defendant argues that merely because the property may be forfeited for more than one purpose does not mean owners can be subjected to "simultaneous, concurrent, or consecutive proceedings where those proceedings are identical in every material aspect." Defendant's Brief at 5. Defendant apparently concedes that either a civil administrative procedure alone or a criminal forfeiture proceeding alone may be appropriate, but finds the Government's "attempt to proceed on parallel tracks ... violative of due process and fundamental fairness." Defendant's Brief at 5.

The Government states that the defendant offers no authority for his suggestion that the Government must elect between civil or criminal forfeiture. Moreover, the Government argues, persuasively, that the drafters of 21 U.S.C. § 881(i) appear to

have indicated that both civil and criminal forfeiture proceedings may be pending at the same time and provides a method for deciding which to take up first. Section 881(i) provides:

(i) The filing of an indictment or information alleging a violation of this subchapter or subchapter 11 of this chapter which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding.

Secondly, the Government argues that the DEA published a notice of intent to forfeit the parcels of land at issue in three successive issues of *USA Today*. In the absence of a claim and bond, the Government asserts, the DEA could have forfeited the parcels under 19 U.S.C. § 1609. However, the Government states that the administrative forfeiture was never completed, but was stopped after defendant's counsel John A. Field, III and defendant's wife, Lynn Schmalfeldt, filed papers which, although apparently somewhat different than the pleadings described in 19 U.S.C. § 1608, nevertheless had the effect of "claims" under that section. The Court notes that the legal effect of such an administrative claim and cost bond as required under § 1608 merely stops the summary forfeiture proceeding and forces the Government to institute judicial condemnation proceedings. The "administrative claim" does not give the claimant any rights in the condemnation proceeding but merely insures that a judicial proceeding will take place before the property is forfeited. If the claimant satisfies the district court's procedural requirements the claimant may contest the forfeiture in court. *See United States v. United States Currency in Amount of $2,857.00*, 754 F.2d 208 (7th Cir.1985). The Court notes, in passing, that it is not clear from the Government's brief whether notice other than notice by publication was given to Lynn Schmalfeldt and the extent to which both she and/or Mr. Field might be considered claimants. The reason for the Court's inquiry is addressed in *Winters v. Working*, 510 F.Supp. 14 (W.D.Tex.1980)

(holding that where the name and address of claimant was known, notice by publication pursuant to section 1607 may not be sufficient to conform to due process).

In any event, the Government asserts that "under current Department of Justice policy, administrative forfeitures will not be pursued with respect to real estate." Although it is clear that the administrative procedures have been stopped, upon a careful reading of the statutes involved, the Court is not convinced that the Government could have employed the summary proceedings that are involved here with respect to the two parcels of land.

It is true that section 881(a) was amended in 1984 to include "real property" as subject property. See 21 U.S.C. § 881(a)(7). However, section 881(d) clearly provides that "the provisions of law relating to the seizure, *summary* and judicial forfeiture ... shall apply to seizures and forfeitures ... under the provisions of this title, *insofar as applicable* and not inconsistent with the provisions hereof...." 21 U.S.C. § 881(d) (emphasis added).

The Court does not see how 19 U.S.C. § 1607 *et seq.* could be said to be applicable through 21 U.S.C. § 881(d) with respect to real property even allowing that the property has a value of less than $100,000. The plain language of § 1607 clearly indicates that it applies only "to seized vessels, vehicles, aircraft, merchandise or baggage which has a value of $100,000 or less" *and* either where "the seized vessel, vehicle, or aircraft was used to import, export, transport, or store any controlled substance"; *or* "where the seized merchandise is merchandise the importation of which is prohibited." *See* 19 U.S.C. § 1607. To the Court's knowledge, section 1607 was never amended so as to subject real property to the summary forfeiture procedures outlined in 19 U.S.C. § 1607 *et seq.* Significantly, a 1984 amendment to Section 1607 *et seq.* merely added the word "aircraft" to its list of transporting conveyances. See 19 U.S.C. § 1607 *et seq.* Cumulative Supplement, May, 1986 under History; Ancillary Laws and Directives.

Still, assuming that somehow section 1607 applies through section 881(d), the Government correctly concludes that whether defendant's argument is viewed as that of double jeopardy or of "collateral estoppel," neither principle is applicable where civil proceedings have merely been *initiated* at the administrative level and no hearings have been held nor a judgment rendered.

Further, in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), a decision followed by the Sixth Circuit in *United States v. Fifty Thousand Dollars U.S. Currency*, 757 F.2d 103 (6th Cir.1985), the Supreme Court held that collateral estoppel did not apply in a subsequent *in rem* forfeiture action against the firearms after the defendant had been acquitted of criminal charges of dealing in firearms without a license. The Court emphasized that "an acquittal on criminal charges does not prove that the defendant is innocent, [but] merely proves the existence of a reasonable doubt as to his guilt ... It is clear that the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel." *89 Firearms*, 465 U.S. at 361–362, 104 S.Ct. at 1104.

The Government makes the point that one might ask whether collateral estoppel would apply if the order were reversed and the Government's civil forfeiture was denied *before* the criminal prosecution. However, the Government rightly concludes that the answer to *that* question has no bearing on this case since there has been no civil *judgment* with respect to the aborted administrative proceeding.

Nonetheless, the *precise* answer to that collateral estoppel inquiry appears to be and I suggest that it is an answer spiked with that quantum of equivocation that is the lifeblood of the law and all lawyers— "It depends." In this instance, it depends on whether a given sanction is civil or criminal. And the answer to *that* question, the Supreme Court tells us, is a matter of statutory construction. *See e.g., Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Put differently, the hypothetical as phrased by the Government is subsumed by the broader principle of statutory construction.

For example in *One Lot Stones v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), the Supreme Court had occasion to discuss the possible extent of recovery under 19 U.S.C. § 1497, an anti-smuggling provision which provides that an undeclared article "shall be subject to forfeiture and such person shall be liable to penalty equal to the value of such article." The Court noted that *that* sanction was clearly intended as a civil remedy not a criminal penalty. "Section 1497 does not result in a forfeiture by reason of the commission of a criminal offense. A forfeiture results from the act of importation without following customs procedures; no criminal offense much less a criminal conviction, is requried." *One Lot Stones*, 409 U.S. at 236, n. 6, 93 S.Ct. at 492, n. 6. Therefore, the court concluded that even where the claimant had been acquitted of charges of violating 18 U.S.C. § 545, a criminal anti-smuggling statute, the imposition of section 1497 was not barred.

The Court did note that "[c]ollateral estoppel would bar a forfeiture under § 1497 *if*, in the earlier criminal proceeding, *the elements of a § 1497 forfeiture had been resolved against the Government.*" *One Lot Stones*, 409 U.S. at 234, 93 S.Ct. at 491. (emphasis added). But again, because acquittal involved the issue of whether the physical act of bringing the gem into the country was done with the requisite intent, while the civil forfeiture proceeding did *not* require that the Government prove the element of intent, the civil forfeiture proceeding did not involve an issue previously litigated and finally determined between the parties.

To answer the Government's hypothetical directly, it appears to the Court that had the Government proceeded in its civil forfeiture (judicial condemnation) proceeding and had the Government lost, that is, if there had been an adjudication that the property had *not* "been used or intended to be used in any manner or part to commit or

to facilitate the commission of a [relevant] violation of this title ..." (See Section 881(a)(7)), the later criminal forfeiture proceeding (§ 853(a)(2)) would arguably involve an issue previously litigated and finally determined between the parties and collateral estoppel would apply. That curious result is, of course, purely hypothetical, and is not applicable here. It results from the partial incorporation of § 881 in § 853, and is unlikely to arise in the real world considering the different burdens of proof, etc.

■ With respect to the question of double jeopardy, the Government notes that the defendant's brief does not address the question of whether a civil forfeiture under 21 U.S.C. § 881 is a criminal proceeding, but argues that even assuming it did address that question, the lack of a prior judgment would keep the double jeopardy clause from applying here. Assuming, *arguendo*, that § 881 were a criminal proceeding, the Government's reasoning again appears sound.

For example, in *United States v. One Clipper Bow Ketch Nisku*, 548 F.2d 8 (1st Cir.1977), the claimant had been charged with illegal possession of a controlled substances in violation of 21 U.S.C. § 841, but the criminal charge was voluntarily dismissed by the Government. In a subsequent § 881 forfeiture proceeding, the claimant argued that the dismissal of the criminal charge barred the forfeiture proceeding by collateral estoppel. The Court rejected the argument out of hand stating that a voluntary dismissal did not amount to an adjudication of the issues.

*A fortiori*, where there is no evidence that the administrative forfeiture was completed, and where the Government asserts that under the Department of Justice "policy," administrative forfeiture will not be pursued with respect to real estate, the Court finds that there are no pending or completed civil proceedings regarding these parcels. Put differently, where a forfeiture complaint has merely been filed and then withdrawn, there has been no adjudication of the issue of forfeiture and

the question of collateral estoppel and/or "double jeopardy" cannot rise.

Moreover, the Court finds the "double jeopardy" argument to be simply wrong in this context. The Court believes that although section 881 is arguably something of a hybrid statute—the Court has discussed at length the historical development of the fundamental human impulses which produce such statutes—it is, nevertheless, from a legal standpoint, at least, essentially civil in nature.

Moreover, other courts have observed that § 881 is not sufficiently criminal in nature to prevent Congress on due process grounds from imposing a burden of proof on a claimant once the Government has shown probable cause. *See e.g., United States v. One 1970 Pontiac GTO, 2-Door Hardtop*, 529 F.2d 65 (9th Cir.1976). Further, the Comptroller General has reported that 21 U.S.C. § 881 is the embodiment of "[t]he Drug Enforcement Administration's civil forfeiture authority...." Report of the Comtroller General at 5. *Also see United States v. Long*, 654 F.2d 911, 914 (3d Cir.1981) (stating that 21 U.S.C. § 881 governs *in rem* forfeitures).

■ Thus, the Court has no difficulty in finding that 21 U.S.C. § 881 is not a criminal proceeding and that the double jeopardy clause does not apply. *Cf. 89 Firearms*, 465 U.S. at 366, 104 S.Ct. at 1107. *See also United States v. One Lincoln Mark V*, 435 F.Supp. 1388 (S.D.N.Y.1978).

■ Notwithstanding defendant's suggestion that the implementation of § 881 and § 853 creates double jeopardy problems, and his protestations that the Government ought not be allowed to proceed with "simultaneous, concurrent, or consecutive proceedings where those proceedings are identical in every respect," it should be clear now that those proceedings are *not* identical in every respect—although they admittedly involve the same property. The Supreme Court has said "Congress may impose both a criminal and a civil sanction in respect to the same act or

omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally for the same offense." *Helvering*, 303 U.S. at 399, 58 S.Ct. at 633.

Finally, the Court notes that 21 U.S.C. § 853(j) allows that the civil forfeiture provisions of 21 U.S.C. § 881(d) shall apply to the criminal section (§ 853) except where they are inconsistent with the provisions of § 853. Thus, the Court believes that where a defendant is not convicted, there would be no special verdict available, no forfeiture could take place at sentencing and 881(d) would simply not be applicable. As we have seen, that state of affairs would *not* bar a subsequent 881 civil forfeiture (judicial condemnation) proceeding because that proceeding is *in rem*, while the § 853 is *in personam*.[1]

1. The Court's research has turned up one case, however, *United States v. Oberlin*, 718 F.2d 894 (9th Cir.1983), which, while not precisely on point, does, at first blush at least, lend some support to the basic premise of defendant's argument: that the Government ought not to get more than one bite out of the apple in a forfeiture proceeding. The Court notes at the outset—I suppose, by way of judicial disclaimer—that the recitation of these curious, I am tempted to say almost macabre, facts is in no way intended to have a didactic purpose, nor is this recitation in any way aimed at these particular criminal defendants. The proper legal analysis simply requires their retelling.

The defendant was convicted of various counts of drug trafficking and of operating a continuous criminal enterprise. He was sentenced on October 18, 1982. A few hours later he committed suicide. Two days later judgment was entered and, on the following day, a notice of appeal was apparently filed on his behalf. The deceased's attorney then filed a motion for abatement. The Ninth Circuit held that the cause of action against the defendant had abated.

The court noted that it is well settled that the death of a criminal defendant pending an appeal of right will abate the prosecution *ab initio.* However, death pending the Supreme Court's *discretionary* determination on a petition for a writ of certiorari will not. *See Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (per curiam) (noting only the petition is dismissed) (other citations omitted).

The Ninth Circuit rejected the Government's argument that since the defendant died before judgment was entered and before the purported notice of appeal, that he did not die "pending appeal." In concluding that while the defendant did not die pending appeal, the effect of his death was the same: the prosecution abates *ab initio.* The court could find no reason to treat a criminal defendant who dies before judgment is entered any differently from one who dies after a notice of appeal has been filed.

The latter point is a significant one because death pending appeal of a criminal conviction abates not only the appeal but "all proceedings in the prosecution from its inception." *Oberlin,* 718 F.2d at 894. (citations omitted). If the sentence included a fine, for example, "the rule of abatement *ab initio* prevents recovery against the estate." *Id.* (citations omitted). Further, "an *abated conviction* cannot be used in any related civil litigation against the estate." *Id.* (citation omitted).

The Court believes, under the facts of this case at least, it could be argued that a (hypothetical) subsequent § 881 forfeiture proceeding should be viewed as a related civil action against the estate and thus prohibited under *Oberlin.* But in the face of Supreme Court decisions allowing subsequent civil forfeiture actions pursuant to § 881, *Oberlin* appears merely to stand for the narrow proposition that a consequence of the concept of a conviction being abated *ab initio* is that the *conviction* cannot be used in a *related civil proceeding.* Thus, even with the indictment dismissed, the Government could still satisfy its initial burden of proof under section 881: "to demonstrate that a substantial connection exists between [the property in question] and *the relevant criminal activity." One 1979 Porsche Coupe,* 709 F.2d at 442. (Of course, the claimant could argue that abatement *ab initio* not only results in dismissing the indictment, but it dismisses the very possibility of "relevant criminal activity." That construction, however, seems untenable, and likely to be rejected.)

In any event, the Ninth Circuit emphatically rejected the Government's argument that abatement does not apply to a criminal forfeiture proceeding under § 848. The court noted that "penal statutes do not survive the death of the wrongdoer." *Oberlin,* 718 F.2d at 896. (citations omitted). The forfeiture was but "a step in the criminal process: it was pleaded in the indictment and was tried in a proceeding which included all the constitutional safeguards granted to criminal defendants." *Id.*

Finally, the Court also rejected the Government's argument that the defendant had waived his right to appeal by killing himself. It found the contention that suicide is the "ultimate waiver" meritless. It found the doctrine of waiver unrelated to the issue of abatement.

Thus upon closer analysis one sees that *Oberlin* does not really provide food for thought with respect to defendant's double jeopardy or collateral estoppel theories, but rather it arguably stands for the unique and highly questionable proposition that when a conviction is abated *ab initio* in a subsequent civil forfeiture proceeding there may be simply no apple against which to proceed.

Defendant also argues that a "logical reading of the jury's determination of fact excludes Frederick R. Schmalfeldt's use or facilitating the use of the property sought to be forfeited." Defendant's Brief at 5. Essentially defendant argues that Counts 2 and 3—the charges of manufacturing and possession with the intent to manufacture and distribute cocaine—are the predicate actions upon which a criminal forfeiture of the property *must* be based. Defendant suggests that since the jury acquitted him on Counts 2 and 3, it has, in essence, stated that Frederick R. Schmalfeldt did not directly or indirectly use or facilitate the use of the property at issue in the commission of any violation.

The Government asserts that an authoritative interpretation of a jury verdict is impossible. This proposition is so obviously true that it needs no amplification. Second, the Government suggests that since the defendant waived the jury on the issues with respect to the forfeiture and left the matter to the Court, he should not be allowed to argue its (hypothetical) resolution of a forfeiture. This argument is also patently correct.

The Court notes that because the defendant has waived his right to have the jury resolve the forfeiture issue, it remains for the Court, after hearing arguments, to determine whether Frederick Schmalfeldt's ownership of the property and his conviction for conspiracy under the facts of this case brings such property into the purview of 21 U.S.C. § 853. In making that determination, the Court will sit as the factfinder and will be able to hear all arguments relevant to the resolution of whether the forfeitable items of real estate were "intended to be used in any manner or part to commit a violation of [title 21] punishable by more than one year's imprisonment." 21 U.S.C. § 881(a)(7).

For all the reasons just discussed, defendant's Motion to Dismiss the Criminal Forfeiture is DENIED.